(No. 10832.—Judgment affirmed.)

THE UNITED STATES FIDELITY AND GUARANTY COMPANY, Plaintiff in Error, *vs.* ELIZABETH G. DICKASON, Exrx., Defendant in Error.

*Opinion filed February 21, 1917.*

1. GUARANTORS—*when cause of action accrues against an indemnitor.* Where a guaranty company which executes a bond for a contractor for the faithful performance of his contract with a railroad company requires the contractor to furnish an indemnitor for it against loss on the bond, the cause of action against the indemnitor accrues upon the breach of the covenants in the bond.

2. SAME—*when indemnitor is not estopped to set up the Statute of Limitations.* One who is indemnitor for a guaranty company which has furnished a bond for the faithful performance of a contract with a railroad company is not estopped to set up the ten years' Statute of Limitations in bar of the recovery of interest against him by the guaranty company merely because he requested the guaranty company not to settle the railroad company's demand on the bond without suit and was permitted to conduct the defense of said suit, and such request and permission do not arrest the running of the Statute of Limitations during the pendency of such suit.

3. SAME—*when judgment in suit against guaranty company is conclusive against its indemnitor as to liability.* In an action upon the bond of a guaranty company for the faithful performance of a contract with a railroad company, where the indemnitor of the guaranty company is notified of the demand against said company and is permitted to defend the suit, the judgment is conclusive against the indemnitor; and the guaranty company, in its subsequent claim against the indemnitor's estate, need not establish its liability to the railroad company.

4. SAME—*executrix of indemnitor's estate is entitled to any defense available to indemnitor.* The filing of a claim against the estate of one who has indemnified a guaranty company against loss for the breach of covenants in a bond is a suit for the enforcement of a legal demand, and the Statute of Limitations, or any other de-

fense which might have been interposed by the indemnitor in his lifetime, may be availed of by his executrix.

5. Limitations—*general rule as to running of the ten years' statute.* The ten years' Statute of Limitations begins to run when the cause of action accrues and continues to run until it becomes a bar, unless the case falls within some saving or qualification of the statute; and while this rule is not without exceptions, the language of the statute must, in general, prevail, notwithstanding apparent inconvenience or hardship.

Writ of Error to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. Samuel C. Stough, Judge, presiding.

Judah, Willard, Wolf & Reichmann, and Arthur M. Cox, for plaintiff in error.

Ashcraft & Ashcraft, (E. M. Ashcraft, of counsel,) for defendant in error.

Mr. Justice Farmer delivered the opinion of the court:

This litigation arises out of the following state of facts: In January, 1900, C. E. Loss & Co. was awarded a contract to do certain work for the Ohio and Kentucky Railroad Company. The railroad company required the contractor to give a bond in the sum of $20,000, with security, for the performance of the contract, and Loss & Co. applied to plaintiff in error, the United States Fidelity and Guaranty Company, to sign its bond to the railroad company. Plaintiff in error was unwilling to sign the bond unless Loss & Co. would indemnify it. Loss & Co. proposed L. T. Dickason as surety on an indemnifying bond to plaintiff in error. After some investigation as to the financial standing of Dickason plaintiff in error agreed to accept him as surety on an indemnifying bond to it. The bond of Loss & Co. to the railroad company with plaintiff in error as surety, and the indemnifying bond of Loss &

Co. to plaintiff in error with Dickason as surety, were exe-
cuted the same date, January 8, 1900, the penalty of each
being $20,000. Loss & Co. defaulted in the performance
of its contract and abandoned it in 1901. The railroad
company employed other contractors to complete the work
at an increased cost, and in November, 1901, rendered to
plaintiff in error a statement of account of the cost of com-
pleting the work Loss & Co. had failed to do. The claim
was something over $30,000. J. K. Bartlett, the general
counsel of plaintiff in error, with offices in Baltimore, took
the matter up at once by correspondence with J. L. Bennett,
of Chicago, the then attorney for Dickason. Many letters
passed between them. Dickason did not want the claim of
the railroad company paid without litigation, and it was
finally agreed the suit, which was begun March 4, 1903,
should be resisted, and the management of the defense was
left to Bennett, Dickason's attorney, and other counsel em-
ployed by him, with the approval of the plaintiff in error.
The case was not tried until June 9, 1910, and then re-
sulted in a judgment against plaintiff in error for the pen-
alty of the bond, $20,000, and interest from January 1,
1902, at six per cent, amounting to $10,126.66, making the
total sum for which judgment was rendered, $30,126.66.
Some preliminary steps were taken by Dickason's counsel
toward having the case reviewed by a higher court, but that
was abandoned and the judgment was paid off by plaintiff
in error June 7, 1911, which, with interest at that time,
amounted to $31,934, besides costs. Dickason died March
22, 1913, and plaintiff in error filed in August following,
a claim against his estate for the sum of $32,748.11 paid
by it in settlement of the judgment of the Ohio and Ken-
tucky Railroad Company. An amended claim for the same
amount was filed May 14, 1914. The amended claim sets
out more fully the facts and circumstances upon which the
claim is based than did the original claim. After a hear-
ing in the probate court the claim was allowed in the sum

of $37,979.22, which was the amount paid on the judgment
by plaintiff in error, with interest from the time of pay-
ment of said judgment.  The executrix of the Dickason
estate appealed from that judgment to the circuit court,
where a trial was had by jury.  At the conclusion of all
the evidence the executrix of the Dickason estate submitted
to the court a motion to instruct the jury to find the issues
for the claimant in the amount of $20,000, the penalty of
the bond, with interest on that amount at five per cent per
annum from June 7, 1911, the date the judgment of the
railroad company was paid off.  The court refused to give
this instruction, but on motion of counsel for claimant in-
structed the jury to find for claimant in the sum of $20,000,
with interest from January 1, 1902, at the rate of five per
cent, making a total of $33,330.55.  Upon verdict returned
in obedience to said instruction the court rendered judg-
ment in favor of plaintiff in error for the sum of $33,330.55
and $333.30 interest from the date of the verdict.  The
executrix of the Dickason estate appealed from that judg-
ment to the Appellate Court for the First District.  That
court held the circuit court erred in refusing the instruc-
tion offered by the executrix and in giving the instruction
offered by the claimant and rendering judgment for the
penalty of the bond, with interest thereon from January 1,
1902.  It was the view of the Appellate Court that inter-
est could not be computed from the date of the breach,
January 1, 1902, because of the bar of the Statute of Limi-
tations, and that the claimant was only entitled to recover
the penalty of the bond, with interest on that sum from
the date the judgment was paid to the railroad company,
June 7, 1911.  It accordingly reversed the judgment of the
circuit court and rendered judgment in the Appellate Court
in favor of plaintiff in error for $24,750, that being the
penalty of the bond and interest thereon at five per cent
from June 7, 1911.  The case was brought to this court
for review by writ of *certiorari.*

It was admitted in open court at the hearing of this case in the circuit court by counsel for defendant in error, executrix of Dickason's estate, that the bond of Loss & Co., with plaintiff in error as surety, was executed and delivered to the railroad company in the penal sum of $20,000, as alleged in the claim, January 8, 1900, and that on the same day Loss & Co., with Dickason as surety, executed a bond in the same penalty to plaintiff in error to indemnify it for signing the bond of Loss & Co. to the railroad company, and that each of the said bonds was delivered on the day of its date; that Loss & Co. proceeded with the work under its contract with the railroad company until January 16, 1901, when it abandoned the contract, and that a claim was made by the railroad company against plaintiff in error for damages resulting from the abandonment of the contract by the contractor, and that said claim on January 1, 1902, became an obligation in favor of the railroad company in the amount of $35,000; that the railroad company brought suit on that claim in March, 1903; that Dickason was notified to defend the suit, and did so in cooperation with plaintiff in error, and that the suit resulted in a judgment in favor of the railroad company against plaintiff in error for $30,126.66, which was paid June 7, 1911. Counsel admitted in a statement to the court and jury that the claim should be allowed against the Dickason estate in favor of plaintiff in error for $20,000, and interest on that amount at five per cent from the date plaintiff in error paid the judgment to the railroad company.

The bond of plaintiff in error, as surety for Loss & Co., bound Loss & Co. to faithfully perform and fulfill its contract and to protect the railroad company from all loss by reason of claims, defects, errors, objections, liens and incumbrances arising from the failure of the principal to perform the covenants of the bond and contract. The indemnifying bond of Dickason to plaintiff in error bound Dickason to keep plaintiff in error indemnified "against all

277 — 6

suits, actions, debts, damages, demands, costs, charges and expenses, including court costs and counsel fees, at law or in equity, and against all loss and damages whatever," that might accrue to plaintiff in error by reason of its suretyship on the bond of Loss & Co. to the railroad company.

Plaintiff in error contends that if its cause of action against Dickason by reason of the breach of the covenants of the bond to the railroad company prior to the bringing of the suit by said company March 4, 1903, is barred by the Statute of Limitations, the bringing of said suit was a new breach, and the statute did not begin to run against the cause of action accruing on account of that breach until the date the suit was commenced. In our view of the evidence nothing was sufficiently proven as to Dickason's temporary absence from the State in March, 1903, to arrest the running of the statute, but we are further of opinion that the cause of action for which the claim was filed accrued January 1, 1902. It was so held in the suit in the Federal court in Kentucky, and in the admission made by counsel for defendant in error in the circuit court for the purpose of obviating the necessity for certain proof that was the date it was conceded the obligation occurred, and that admission was not controverted or denied. In our opinion that was the date which must be accepted as the date the cause of action accrued.

Section 16 of the Limitation law requires actions on bonds to be commenced within ten years next after the cause of action accrued, but if a payment or new promise to pay shall have been made in writing within or after said period of ten years, then the action may be commenced at any time within ten years after such payment or promise to pay. It is not contended that the cause of action was taken out of the Statute of Limitations by any payment or promise to pay in writing, but it is contended that defendant in error is estopped from setting up the bar of the statute because, in accordance with Dickason's wish and re-

quest, no settlement of the claim of the railroad company was made before suit, and Dickason was permitted by the plaintiff in error to manage and conduct the defense of the suit by the railroad company against plaintiff in error. The cause of action accruing January 1, 1902, was barred in ten years unless something occurred to toll the Statute of Limitations. The statute began to run when the cause of action accrued, and the rule is that when the statute begins to run it will continue to run until it becomes a bar, unless there is some saving or qualification in the statute itself. (*People* v. *White,* 11 Ill. 341; *Peoria County* v. *Gordon,* 82 id. 435; *Beattie* v. *Whipple,* 154 id. 273.) The plaintiff in error was not bound to wait until the claim of the railroad company against it was reduced to judgment before it could maintain its action against Dickason. This, we understand, is not disputed by plaintiff in error, but it is contended the suit would have interfered with or embarrassed the indemnitor in the defense of the suit by the railroad company against the indemnitee. If plaintiff in error had settled with the railroad company before the validity of the claim against it had been adjudicated, the burden would have been upon it, in an action against its indemnitor, to prove a valid and legal liability to the railroad company. By notifying the indemnitor of the claim of the railroad company and of the suit brought to establish the claim and permitting the indemnitor to defend the suit, the plaintiff in error, in an action against the indemnitor, was relieved of the burden of establishing the liability to the railroad company. The judgment in that suit was conclusive against the indemnitor.

The matters relied on by plaintiff in error to toll the statute do not arise out of any saving or qualification in the statute itself but out of the circumstance that Dickason was notified by plaintiff in error of the claim of the railroad company and of the suit to enforce the claim and permitted to assume the management of the defense to the

suit. On that ground it is contended defendant in error is estopped from asserting the bar of the Statute of Limitations ran during the pendency of the suit of the railroad company against plaintiff in error. We do not think this position of plaintiff in error is aided by the fact that this action was begun by filing a claim in the probate court against the estate of Dickason and that probate courts may exercise equitable powers in adjusting claims and in the settlement of estates. This suit is for the enforcement of a legal demand, and any defense Dickason might have interposed to it during his lifetime can be availed of by his executrix. If he could have set up the Statute of Limitations in bar of the action it would seem to necessarily follow that his executrix can do so. The decision of the case, therefore, in our view of it, depends upon whether the running of the statute was suspended during the pendency of the suit of the railroad company against plaintiff in error.

Sections 18, 19, 20, 21, 22 and 23 of our Limitation law provide the savings or qualifications which arrest the running of the statute, but none of them are involved in this case. If the statute ceased to run in this case it was not by virtue of any qualification or exception in the statute itself. While the general rule is as above stated, that when the statute begins to run it will continue to run unless arrested by some saving or qualification of the statute itself, the rule is not without exceptions. The exceptions were pointed out in *Braun* v. *Sauerwein,* 10 Wall. 218, and *Amy* v. *Watertown,* 130 U. S. 320. In the latter case the court said: "There is one class of cases which is excluded from the operation of the statute by act of the law itself. * * * This class embraces those cases in which no action can be brought at all, either for want of parties capable of suing or because the law prohibits the bringing of an action. In such cases the general law operates as a qualification or tacit condition of the particular statute." In the same case the court recognized the general rule to be that the language

of the statute must prevail, and said no reason based on apparent inconvenience or hardship would justify a depart- ure from it. There are not wanting cases where the rule has not been strictly adhered to, and plaintiff in error cites in its brief decisions tending to support its contention, but it appears to us the weight of authority is contrary to its position, and the reason upon which the weight of authority is based seems to us much better than that of the cases to the contrary. There was no. legal bar by reason of any qualification or saving in the Statute of Limitations, or of any law, to the bringing of an action against Dickason by plaintiff in error at any time during the pendency of the suit by the railroad company. The most that is or could be claimed is, that because plaintiff in error did not bring suit but permitted Dickason to defend the suit of the rail- road company against plaintiff in error, it would be an in- justice to hold the Statute of Limitations continued to run while that suit was being contested, during which time the plaintiff in error refrained from bringing suit against Dick- ason, awaiting the outcome of that litigation. It is not claimed Dickason promised or agreed not to plead the Stat- ute of Limitations. All he did and said was inconsistent with any such theory, for he denied the validity of the rail- road company's claim from the first and defended against it until it was reduced to judgment. He was not guilty of any fraud or concealment which, under section 22 of the Limitation act, would arrest the running of the statute. Plaintiff in error had full knowledge of the facts at all times and of its rights, and nothing was concealed from it by Dickason.

Able and industrious counsel have cited many decisions, and each has analyzed and attempted to explain away the apparent force of the cases cited by the other. *Shapley* v. *Abbott,* 42 N. Y. 443, (1 Am. Rep. 548,) was a suit to re- cover on a note more than six years after the note became due. The defendant pleaded the Statute of Limitations.

Plaintiff alleged and relied on an oral promise made by defendant before an action on the note was barred, that if the note was not paid until it was "outlawed" he would not plead the Statute of Limitations. The limitation act of New York provided that an acknowledgment or promise to take a case out of the Statute of Limitations must be contained in some writing signed by the party to be charged thereby. The court said the only ground that plaintiff had to stand on was that the defendant was estopped, by reason of his promise not to plead the Statute of Limitations, from interposing that defense. The court discussed at length the doctrine of an equitable estoppel *in pais* and held it did not apply; that a promise to take a cause of action out of the operation of the statute was required by the statute itself to be in writing; that courts must administer the law so as to uphold the policy of the statute, and said if a parol promise not to plead the statute be held a waiver or an estoppel it would subvert the statute and let in the mischief which it was the policy of the statute to shut out. The opinion of the court is lengthy and appears to us to be sound, although it is pointed out in the brief of plaintiff in error that the Supreme Courts of Missouri and Iowa have expressly refused to follow it, and some other courts have held a verbal promise not to plead the Statute of Limitations estops the promisor from interposing that defense. On the other hand, it is stated in the brief of defendant in error that the *Shapley case* has been cited by this court and the courts of a number of other States, and also by Federal courts, including the Supreme Court of the United States.

That plaintiff in error elected not to compromise or settle the claim of the railroad company but to permit Dickason to defend the suit and to forbear asserting its claim against him by suit until the action by the railroad company was terminated by a judgment was not a saving or qualification of the statute which arrested the running of the limitation during the pendency of the suit, and did not

bring the case within the class of cases where the general
law operated as a qualification of the statute. By the
weight of authority, we think, as well as the better reason-
ing, Dickason did nothing which would constitute an equi-
table estoppel against him in his lifetime, or his executrix
after his death, from setting up the bar of the Statute of
Limitations. Some of the cases sustaining, in principle, this
conclusion are *Boone* v. *Colehour,* 165 Ill. 305, *Ennis* v.
*Pullman Palace Car Co.* 165 id. 161, *Best* v. *Davis Sewing
Machine Co.* 65 Hun, 72, *Andreae* v. *Redfield,* 98 U. S. 225,
and *Kennedy* v. *Foster's Exr.* 77 Ky. 479.

We are of opinion the judgment of the Appellate Court
was right, and it is affirmed.    *Judgment affirmed.*