CLYDE SAVINGS & LOAN ASSOCIATION, Plaintiff and Counterdefendant-Appellee, *v.* THE MAY DEPARTMENT STORES *et al.*, Defendants.—(ERNEST OECHSLIN, JR., Defendant and Counterplaintiff-Appellant.)

First District (2nd Division)    No. 80-2483

Opinion filed September 8, 1981.

R. Marlin Smith and Ross, Hardies, O'Keefe, Babcock & Parsons, both of Chicago, for appellant.

Howard M. Hoffman, Ira Gould, and Holleb, Gerstein & Glass, Ltd., all of Chicago, for appellee.

Mr. JUSTICE PERLIN delivered the opinion of the court:

This appeal arises solely on the pleadings. Defendant, Ernest Oechslin, Jr. (Oechslin), contends that, after he had filed a counterclaim and without his consent, the trial court in violation of section 52 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 52) granted plaintiff, Clyde Savings & Loan Association (Clyde), leave to "withdraw its complaint."[1] Clyde maintains that it moved to withdraw its complaint because the action had become moot.[2] For the reasons set forth herein, we conclude that the action was moot and affirm the order of the trial court.

The relevant facts are undisputed. Oechslin owned a 12-acre undivided parcel of real estate in North Riverside, Illinois. In 1969 Oechslin sold approximately four of the 12 acres to Clyde Savings & Loan Association, retaining a "private driveway easement" over the Clyde property. The Clyde property was improved with a seven-story office building, parking lot and underground "drive-in teller station." Prior to the sale of the Clyde property and until the time of the instant litigation, Oechslin used the eight-acre parcel he retained as a wholesale nursery and greenhouse.

In 1978 Oechslin entered into a contract to sell his eight acre parcel to May Department Stores, Inc. (May). The May company proposed to develop the property as a Venture Department Store (Venture), and its contract with Oechslin was contingent upon May/Venture's ability to obtain from the Village of North Riverside rezoning of the tract for use as a retail shopping center. In its rezoning application May/Venture asserted its intention to use the easement as one of two major ingress and egress routes to the Venture site.

On August 3, 1978, before the zoning hearing began, Clyde filed a complaint seeking to enjoin Oechslin's and May/Venture's proposed use of the easement and also requesting a declaratory judgment that such use would constitute an unlawful overburdening of the easement. In its prayer for relief Clyde also asked the trial court to declare that use of the

---

[1] Section 52 is the only section under which a plaintiff may voluntarily dismiss its action. This section provides that:

"(1) The plaintiff may, at any time before trial or hearing begins, upon notice to each party who has appeared or his attorney, and upon payment of costs, dismiss his action ° ° ° by order filed in the cause. ° ° ° *After a counterclaim has been pleaded by a defendant, no dismissal may be had as to him except by his consent.*" (Emphasis added.) Ill. Rev. Stat. 1979, ch. 110, par. 52(1).

The Civil Practice Act makes no provision for "withdrawal of a complaint."

[2] Although the trial court did not specifically set forth its basis for allowing Clyde to withdraw the complaint, it would appear from the memoranda filed by Clyde and included in the record, that the trial court doubtless determined the action to be moot.

"private driveway easement" was restricted to traffic of a nature and volume which existed prior to the creation of the easement. Clyde asked further for a declaration that any change in usage could be only for traffic attendant a secondary entrance to the Oechslin property as improved with office buildings.

On September 8, 1978, Oechslin and May/Venture jointly filed an answer and two specifically designated counterclaims.[3] Oechslin and May/Venture maintained that the easement agreement did not contain the limitations alleged in Clyde's complaint and asked for judgment in their favor.

During pendency of the suit the zoning petition of Oechslin and May/Venture was denied. On January 24, 1980, the trial court granted the motion of May/Venture to dismiss them from the case, as their contract with Oechslin had been terminated. Oechslin filed a motion for summary judgment on March 3, 1980.

On June 9, 1980, Clyde filed a "motion to terminate litigation" pursuant to section 45(4) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 45(4)), alleging that the action had become moot. On the same day Clyde moved to amend its complaint by deleting that part of the prayer for relief in which it had asked the trial court to declare that use of the "private driveway easement" was restricted. On June 12 the trial court granted Clyde's motion to amend its complaint, whereupon Oechslin moved the court to strike Clyde's amendment.[4]

On June 13, 1980, Clyde filed a motion to withdraw its complaint. In his memorandum of June 20 Oechslin opposed both Clyde's motion to "terminate litigation" and its motion to "withdraw its complaint." On June 23 the trial court granted Clyde's motion to withdraw its complaint, stating that such withdrawal would not affect the pendency of Oechslin's counterclaims. On June 30 Oechslin moved the court to reconsider its order permitting the withdrawal of Clyde's complaint. Oechslin's motion was denied "with no just reason to delay enforcement or appeal," and he appeals from that order.

Clyde's complaint was filed pursuant to the declaratory judgment act (Ill. Rev. Stat. 1979, ch. 110, par. 57.1), which provides in part:

---

[3] The first designated counterclaim asserts that in designing and constructing its parking lot and exit ramp from the drive-in teller station, Clyde obstructed and interfered with Oechslin's use of the easement. Oechslin also maintains that Clyde has wrongfully constructed an "access aisle as an integral part of its parking lot" over the easement, instead of a driveway as agreed upon by the parties.

The second counterclaim alleges that Clyde is in violation of certain village zoning ordinances in that it has not provided the minimum number of off-street parking spaces. Oechslin claims that such violations interfere with and obstruct his use of the easement.

[4] The record does not reveal whether the trial court acted upon Oechslin's March 3 motion for summary judgment or his June 12 motion to strike the amendment to Clyde's complaint.

"(1) No action or proceeding is open to objection on the ground that a merely declaratory judgment or order is sought thereby. *The court may, in cases of actual controversy,* make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of any \* \* \* contract or other written instrument, and a declaration of the rights of the parties interested. \* \* \* *The courts shall refuse to enter a declaratory judgment or order, if it appears that the judgment or order, would not terminate the controversy or some part thereof, giving rise to the proceeding.*" (Emphasis added.)

■■ "Actual controversy" in the context of the statute requires a showing that the underlying issues of the case are not moot or premature. A court is not required to pass judgment on mere abstract propositions of law, to render an advisory opinion or to give legal advice as to future events. (*Midwest Petroleum Marketers Association v. City of Chicago* (1980), 82 Ill. App. 3d 494, 499, 402 N.E.2d 709; *Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 362 N.E.2d 298; *Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 389 N.E.2d 529.) Moreover, the proviso that the court shall refuse entry of a declaratory judgment unless it will result in termination of "the controversy or some part thereof" emphasizes the fact that the declaratory judgment procedure is not intended to permit litigation of moot or hypothetical cases.[5] Ill. Ann. Stat., ch. 110, par. 57.1, Historical and Practice Notes, at 130 (Smith-Hurd 1968).

■■ The issue in an action seeking declaratory relief is whether, considering all the circumstances, there is a substantial controversy between the parties having adverse legal interests of sufficient immediacy and reality to warrant issuance of declaratory judgment. If a complaint for declaratory judgment fails to show a controversy exists, or if the question involved is moot, the suit should be dismissed on motion. *Wood v. School District No. 65* (1974), 18 Ill. App. 3d 33, 36, 309 N.E.2d 408; *Burgard v. Mascoutah Lumber Co.* (1955), 6 Ill. App. 2d 210, 127 N.E.2d 464.

In the instant case Clyde maintains that the dismissal of May/Venture as defendants rendered moot the controversy pleaded in Clyde's complaint. Clyde states that it challenged only the right of May/Venture to overburden the easement and that "when the May/Venture threat was extinguished, the dispute was likewise extinguished."

---

[5] The granting or denying of declaratory relief even when the controversy or some part thereof will be settled thereby is discretionary with the court. Courts *"may,* in cases of actual controversy, make binding declarations of rights." (Emphasis added.) Ill. Ann. Stat., ch. 110, par. 57.1, Historical and Practice Notes, at 131 (Smith Hurd 1968).

Oechslin argues that the dispute was not in fact extinguished because in its original complaint for declaratory judgment Clyde had alleged that the "private driveway easement" was restricted to traffic of a nature and volume which existed prior to the creation of the easement, and further that any change in usage would be only for traffic attendant a secondary entrance to Oechslin's property as improved with office buildings. Oechslin contends that the agreement contained no such restrictions, and therefore the parties are still at issue.

Oechslin cites the case of *A. S. & W. Club v. Drobnick* (1962), 26 Ill. 2d 521, 187 N.E.2d 247, for the proposition that an actual controversy is presented when parties take adverse positions with respect to the meaning of a real estate agreement. He also offers the case of *Trossman v. Trossman* (1960), 24 Ill. App. 2d 521, 531-32, 165 N.E.2d 368, wherein the court stated that "the mere existence of a cloud, denial of a right * * * the existence of conflicting claims * * * may constitute the operative facts entitling a party to declaratory relief."

The cases cited by Oechslin are factually distinguishable from the instant case. In *A. S. & W. Club* the plaintiff, a grantee of realty under a deed from the defendants, brought a declaratory judgment action for construction of certain provisions in the deed. The complaint alleged that the plaintiff proposed to convey the property to a third party and that the defendants claimed the deed "restricted" such a sale and required the plaintiff to construct a clubhouse on the property. On appeal the defendants argued that the complaint did not sufficiently allege a controversy and thus failed to state a case for declaratory relief. The Illinois Supreme Court found that "the dispute does not relate to a hypothetical case but is clearly an actual controversy calling for an adjudication of present rights." *A.S. & W. Club*, at 524.

In the case at bar the potential buyer of the property was dismissed from the action, and the record does not reveal a present proposal by Oechslin to convey the property to another party. Unlike *A.S. & W. Club* there is no imminent buyer or proposed use for the Oechslin property, and thus any dispute as to the proper interpretation of the easement agreement would necessarily be predicated on a hypothetical case.

In the *Trossman* case the plaintiff brought suit against his wife seeking to establish the validity of an antenuptial agreement. The complaint alleged that the wife believed the agreement to be invalid and that in the event she was predeceased by her husband, she would claim a dower and intestate share in his estate. She moved to dismiss the action on the ground that any injury to the plaintiff was purely speculative. Reversing the trial court's dismissal of the action, the appellate court held that the controversy was neither moot nor hypothetical. The death of the husband and the disposal of his estate was inevitable, making imminent litigation as to the meaning of the agreement.

In the instant case the sale of the Oechslin property is not inevitable. There is no proposed buyer for the property, nor does it appear that Oechslin is presently negotiating with a buyer. This court will not engage in predictions as to whether a potential buyer will seek to use the Oechslin property in a manner which will overburden the easement. It is the highly speculative nature of this case which differentiates it from cases held to be not moot.

Oechslin also asks this court to consider the case of *Kern v. Chicago & Eastern Illinois R.R. Co.* (1963), 44 Ill. App. 2d 468, 195 N.E.2d 197. In *Kern* the plaintiffs, a class of stockholders, brought suit for declaratory judgment against the defendant corporation alleging that the company had without authority adopted a bylaw that would dilute the stockholders' voting rights. Two days after institution of the lawsuit, the defendants revoked the offending bylaw. The defendants contended that such action rendered the case moot. On appeal they argued at length that the bylaw in question was valid, and at the same time they also argued that the case was moot since the bylaw had been revoked. Nearly half of the defendants' 75 page brief and a substantial portion of their oral argument was devoted to the legality and the desirability of the bylaw they had previously revoked. Based on their continued assertion of the validity of the bylaw and the fact that they had revoked it only two days after the lawsuit was instituted, the appellate court concluded that it was the defendants' intent at some opportune time to "recreate the condition as it existed at the time the litigation was commenced." (*Kern*, at 477.) The *Kern* court held, therefore, that the case was not moot.

■■ In the instant case Clyde maintains that the dispute is moot. Clyde has abandoned its contention that the easement agreement should be subject to the restrictions set forth in its original complaint. Unlike the *Kern* case, the record in the case at bar does not reveal an intent by Clyde to recreate the dispute as it existed at the time litigation was commenced. In fact, in its brief on appeal, Clyde stated that "it is quite possible that Oechslin would develop the property without any objections from Clyde."

■■ Clyde's motion to withdraw its complaint, though improperly styled, was equivalent to a motion to voluntarily dismiss its action (Ill. Rev. Stat. 1979, ch. 110, par. 52). Under the Civil Practice Act a plaintiff may not voluntarily dismiss its action unless it first obtains the consent of any defendant who has previously filed a counterclaim.

The purpose of section 52 of the Civil Practice Act is to prevent a voluntary dismissal where without his consent such dismissal would be unfair or unjust to a defendant. (*Juen v. Juen* (1973), 12 Ill. App. 3d 284, 297 N.E.2d 633; *In re Marriage of Weiss* (1980), 87 Ill. App. 3d 643, 409 N.E.2d 329.) Where, as in the case at bar, a controversy has become moot,

however, voluntary dismissal by plaintiff would not prejudice the defendant.

Clyde's motion apprised the trial court that the action had become moot. Thereafter the trial court's order permitting Clyde to withdraw its complaint did not prejudice Oechslin nor affect the pendency of his counterclaims and cannot, therefore, be deemed error.

The order of the circuit court of Cook County is affirmed.

HARTMAN, P. J., and DOWNING, J., concur.