**VENTURI, INC., a Delaware Corporation, Plaintiff,**

v.

**The AUSTIN COMPANY, A Corporation, and General Accident Insurance Company, a Corporation, Defendants.**

Civ. No. 87–4373.

United States District Court, S.D. Illinois, Benton Division.

March 8, 1988.

Morris Lane Harvey, Fairfield, Ill., for plaintiff.

Michael Reda, Robert Wilson, Edwardsville, Ill., Robert B. Wedge, David L. Tank, Atlanta, Ga., for defendants.

### MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

This matter is before the Court on plaintiff's Motion to Dismiss (Document No. 13). The Motion urges the Court to dismiss the five counterclaims asserted by the defendants in their Answer on the basis of limitations and failure to state a claim on which relief can be granted.

### Background

It appears from the record that on March 25, 1977, defendant, the Austin Company (Austin), contracted with plaintiff, Venture, Inc. (Venturi), to construct certain silos and other facilities for an entity known as Dixie Portland Flour Mills, Inc. (Dixie) at that firm's Milner, Georgia site.[1] Under this agreement, Venturi performed their work as a subcontractor of Austin. Venturi's work was apparently substantially completed around December 7, 1978. Almost seven years later, in August of 1985,[2] cracks began appearing in the walls of the silos which resulted in Dixie making a demand on Austin to repair them. Austin thereafter made substantial repairs to the silos, incurring expenses allegedly in excess of $574,000.00 for which it made a claim on its insurer for the project, General Accident Insurance Company (General). Apparently, General, pursuant to its policy in favor of Austin, at least partially reimbursed Austin for its expenses in repairing the silos. Thereafter, in August of 1987, General demanded reimbursement from Venturi for the funds it had paid Austin to repair the silos.

On October 9, 1987, Venturi filed a Complaint for Declaratory Judgment pursuant to § 2–701, Ill.Code of Civil Procedure, SHA ch. 110, ¶ 2–701, in the Circuit Court of Wayne County, Illinois, seeking a declaration of its rights and responsibilities to Austin and General under its contract with Austin. On November 30, 1987, Austin and General removed that case to this Court in accordance with 28 U.S.C. § 1446 asserting diversity of citizenship under 28 U.S.C. § 1332 as the basis for this Court's jurisdiction of the matter. Concurrently, Austin and General filed their Answer and asserted five counterclaims: 1) breach of contract, 2) negligence, 3) statutory fraud, 4) express indemnity, and 5) implied indemnity. These counterclaims are the subject of Venturi's Motion to Dismiss.

### Discussion

As a threshold matter, the Court notes that since its jurisdiction is derived from diversity of citizenship, the substantive law of Illinois, as well as its applicable conflicts of laws decisions, are controlling. *Hartford Accident and Indemnity Co. v. Crider*, 392 F.Supp. 162, 167 (N.D.Ill.1974) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).) Illinois, in choice of laws questions, follows the "most significant contacts" approach of the *Restatement (Second) of Conflict of Laws § 145. Ingersoll v. Klein*, 46 Ill.2d 42, 262 N.E.2d 593 (1970); *see also, Edwardsville Nat. Bank v. Marion Laboratories, Inc.*, 808 F.2d 648, 651 (7th Cir.1987).

Another preliminary consideration is the plaintiff's invocation of the Illinois Borrowing Statute, S.H.A. ch. 110, ¶ 13–210. That statute states

When a cause of action has arisen in a state or territory out of this State, or in a foreign country, and, by the laws thereof, an action thereon cannot be maintained by reason of the lapse of time, an action thereon shall not be maintained in this State.

---

1. The Court notes at the outset that this contract contains a mandatory arbitration clause which both parties are apparently ignoring. See Contract, Article 12.

2. Plaintiff's Exhibit B to its Motion shows the date that the cracks were discovered was apparently around August 16, 1985.

As the defendants correctly note, the statute is not applicable where one of the parties is a resident of Illinois. *Coan v. Cessna Aircraft*, 53 Ill.2d 526, 293 N.E.2d 588 (1973); *see also Nutty v. Universal Engineering Corp.*, 564 F.Supp. 1459, 1461–62 (S.D.Ill.1983), *Miller v. Lockett*, 75 Ill.Dec. 224, 457 N.E.2d 14 (1983). However, defendant incorrectly asserts that a "resident" for the statute's purpose is the same as a "resident" for diversity purposes. Such is not the case.

There appears to be no state court decision defining corporate residency for borrowing act purposes but the Northern District of Illinois courts have held that in the absence of a statutory or court-supplied definition, we, as federal courts, must apply—as would the state courts—the general common law approach to corporate residency. *See, Hollins v. Yellow Freight System, Inc.*, 590 F.Supp. 1023 at 1026 (N.D.Ill.1984). This Court agrees. That being the case, the Court holds that for borrowing act purposes, a corporation is a resident only of the state(s) in which it is incorporated. *Id. See also, Edward Hines Lumber Co. v. Vulcan Materials Co.*, 669 F.Supp. 854, 857 n. 4 (N.D.Ill. 1987). Thus, since it is undisputed that Venturi is a Delaware corporation, it is not an Illinois resident for borrowing act purposes and the statute applies. The impact of the statute on Austin's and General's counterclaims will be discussed *infra.*

Having reached the point where the Court begins its analysis of plaintiff's Motion, it deems it useful to summarily outline the sequence of events leading to this lawsuit, especially in light of the fact that numerous limitations questions exist.

March 25, 1977 ..Date of Contract between Venturi and Austin.
December 7, 1978 Work "substantially" completed by Venturi.
August 16, 1985 Cracks discovered by Dixie.
October 1, 1985 3 Demand made by Dixie on Austin.
September 4, 1987 Demand made by Austin on General.
September 16, 1987 ..........Demand made by General on Venturi.

**Breach of Contract**

Austin and General claim that Venturi breached its contract with Austin by virtue of its failure to follow the plans and specifications made a part of that contract in constructing the silos. Venturi claims that defendants' claims are barred in Illinois by virtue of the borrowing act because they would be barred in Georgia. In Illinois, the statute of limitations on written contracts is ten years. S.H.A. ch. 110, ¶ 13–206. The general rule is that the statute begins to run as soon as the cause of action accrues. *U.S. Fidelity Co. v. Dickason*, 277 Ill. 77, 115 N.E. 173 (1917). In Georgia, the statute of limitations on written construction contracts is six years. Ga. Code Ann. § 3–705. *Benning Construction Company, et al. v. Lakeshore Plaza Enterprises, Inc.*, 240 Ga. 426, 241 S.E.2d 184 (1977). Under Georgia law, the statute of limitations runs from the time the contract is broken and not at the time the actual damages result or are ascertained. *Space Leasing Associates, et al. v. Atlantic Building Systems, Inc.*, 144 Ga.App. 320, 241 S.E.2d 438 (1977). Thus, in both Illinois and Georgia, limitations for breach of contract run from the time of the breach.

For the purposes of this counterclaim, it is clear that Austin and General's claim arose in Georgia, for that is where the breach occurred when Venturi allegedly failed to perform their work in accordance with Austin's plans and specifications. The next step then is to determine if the claim would be barred in Georgia.

Venturi apparently did the allegedly defective work prior to its substantial completion of the job, however, because the Court has no exact time to work from, it will assume that the breach occurred at the time the work was substantially completed, December 7, 1978. Therefore, limitations began to run on that date. Applying Illi-

---

**3.** Although the record does not reflect exactly when Dixie made demand on Austin for the necessary repairs, the Court will assume for the purposes of this motion that Austin was notified October 1, 1985.

nois law, limitations run on December 6, 1988. Applying Georgia law, limitations ran on December 6, 1984. Hence, under Georgia law, defendants' counterclaim for breach of contract would be barred and therefore could not be brought in Illinois because of the borrowing act.

■ Presupposing this conclusion, defendants additionally assert that S.H.A. ch. 110, ¶ 13-207 precludes plaintiff's assertion of limitations. That statute reads in relevant part:

A defendant may plead a set-off or counterclaim barred by the statute of limitation, while held and owned by him or her, to any action, *the cause of which was owned by the plaintiff or person under whom he or she claims, before such set-off or counterclaim was so barred,* and not otherwise. [Emphasis added.]

Giving the wording of the statute its literal meaning, a party may not assert a limitations defense to a counterclaim if that party's claim arose before the counterclaim was barred by limitations. As will be shown, Venturi's declaratory claim did not arise until after limitations had run on defendants' counterclaim for breach of contract.

Venturi filed its Complaint in state court pursuant to Illinois' declaratory judgment statute, S.H.A. ch. 110, ¶ 2-701. In order for a plaintiff to have standing under the statute, there must be an actual controversy, (i.e., the facts and issues are not premature or moot) and the party seeking declaratory relief must possess a personal claim, status or right which is capable of being affected. *Underground Contract Ass'n v. City of Chicago*, 66 Ill.2d 371, 5 Ill.Dec. 827, 362 N.E.2d 298 (1977). Put in a more comprehensible form, the test is whether, considering all the circumstances, there is substantial controversy between the parties having adverse legal interests of sufficient immediacy and reality to warrant issuance of a declaratory judgment. *Clyde Sav. & Loan Ass'n v. May Dept. Stores*, 100 Ill.App.3d 189, 55 Ill.Dec. 630, 426 N.E. 2d 955 (1981).

In the case at bar, Venturi first received notification of General and Austin's claim against it on September 16, 1987. The Court, in light of the authority cited above, holds that Venturi had no standing to bring (and thus did not "own") a complaint for declaratory judgment until it received this notification. Because the statute of limitations on the defendants' contract counterclaim ran December 6, 1984, it ran *before* Venturi "owned" its declaratory claim, and therefore the limitations defense is not precluded by S.H.A. ch 110, ¶ 13-207.

## Negligence

For their second count, Austin and General allege that Venturi was negligent in constructing the silos by either failing to install or to properly install the reinforcing steel which was an integral part of the walls. Venturi, as in their defense to the contract counterclaim, urges that the counterclaim is precluded by the borrowing act because such a claim would be barred in Georgia.

■ In Illinois, the statute of limitations for negligent injury to real property is five years. S.H.A. ch. 110, ¶ 13-205. The cause of action arises when the negligent act takes place. *Simoniz Company v. J. Emil Anderson & Sons, Inc.*, 81 Ill.App.2d 428, 225 N.E.2d 161 (1967); *see also Rock Island Bank v. Aetna Cas. & Sur. Co.*, 692 F.2d 1100 (7th Cir.1982). Georgia, on the other hand, applies a four year statute of limitation to tortious damage to real property cases. Ga.Code Ann. § 3-1001. *Bicknell v. Richard M. Hearn Roofing & Remodeling, Inc.*, 171 Ga.App. 128, 318 S.E. 2d 729 (1984). The cause of action accrues at the time of completion of construction, not at the time of the discovery of the injury. *Id.*

Here, Austin and General's cause of action accrued on or about December 7, 1978, the date Venturi "substantially" completed their part on the silos. Thus, limitations ran December 6, 1982, and in this case, defendants' claims for negligence would be barred in Georgia. Applying Illinois' borrowing act, the Court finds they are also barred in this forum. Defendants again assert S.H.A. ch. 110, ¶ 13-207 precludes

plaintiff from asserting the limitations bar, but as in their contract claim, this contention is without merit.

■ Plaintiff, as previously discussed, did not "own" a cause of action for declaratory judgment until September 16, 1987. Because limitations ran on defendants' negligence claim in December of 1982, ¶ 13–207 would not be applicable. Accordingly, the Court finds that this counterclaim, too, must be dismissed.

### Equitable Tolling

■ General and Austin vigorously assert that even if this Court should find the Georgia limitations controlling, they have been equitably tolled by plaintiff's conduct. Defendants urge that Venturi fraudulently "concealed" its allegedly defective work by pouring concrete over it. (Defendants' *Memorandum*, p. 17). However, to label this activity "fraudulent," under the circumstances, strains the bounds of credulity. Inasmuch as this project was a continuous, 24 hour-a-day "slip-form" operation, Venturi was obliged to pour the concrete— in fact, that was the only way to complete the job.

Because the dispositive statutes of limitation are Georgia's, the Court, under the most significant contacts test, finds it appropriate to apply Georgia law regarding equitable tolling. Fraud may be actual or constructive. Actual fraud consists in any kind of artifice by which another is deceived. Constructive fraud consists in any act of omission or commission contrary to legal or equitable duty, trust or confidence justly reposed, which is contrary to good conscience and operates to the injury of another. *Shipman v. Horizon Corporation*, 245 Ga. 808, 267 S.E.2d 244 (1980). Actual fraud tolls the statute of limitations, constructive fraud does not. *Id.*

In the instant case it is clear, even assuming defendants' assertions are true, that Venturi at best was guilty only of constructive fraud. It was under a duty to cover the steel with concrete, which it did. It therefore cannot be seriously argued that its sole purpose in pouring the concrete was to create an artifice to conceal its

allegedly negligent acts from General and Austin. For this reason, the Court finds that the Georgia statutes were not tolled by Venturi's actions, and thus applying the borrowing act, both defendants' contract and negligence claims are barred in this forum.

### Illinois Consumer Fraud and Deceptive Business Practices Act

■ The defendants allege, in Count III, a claim for statutory fraud based on the Illinois Consumer Fraud and Deceptive Business Practices Act. S.H.A. ch. 121–½ § 261 *et seq.* Plaintiff Venturi strongly urges this Court to find that the Act has no extraterritorial application, and thus defendants have failed to state a claim. The Court need not reach that issue.

While the Court feels that the parties and occurrence in question probably come within the purview of the Act, it finds that defendants' counterclaim nevertheless fails to state a claim. A course of deceptive conduct does not state a claim under the Act unless trade practices addressed to the market generally or consumer protection concerns are involved. *Heritage Ins. Co. v. First Nat. Bank of Cicero*, 629 F.Supp. 1412, 1419 (N.D.Ill.1986), (following *Newman–Green, Inc. v. Alfonzo–Larrain*, 590 F.Supp. 1083 (N.D.Ill.1984). *Heritage* held that the Act requires some sort of "public" injury. To hold otherwise, the Court opined, " 'would effectively supplant Illinois' common law of contracts and fraud.' " *Heritage*, supra, *id.* As one Illinois court has written, "... the Act is intended to reach practices of the type which affect consumers generally and *is not available as an additional remedy to redress a purely private wrong.*" *Frahm v. Urkovich*, 113 Ill.App.3d 580, 69 Ill.Dec. 572, 576, 447 N.E.2d 1007, 1011 (1983). [Emphasis added.] *See also Exchange Nat. Bank v. Farm Bureau Life Ins.*, 108 Ill. App.3d 212, 63 Ill.Dec. 884, 438 N.E.2d 1247 (1982).

In the case at bar, only a private wrong has been alleged. There are no allegations of any pattern of conduct by Venturi which would indicate that it routinely negligently constructs buildings or breaches contracts.

While, as defendants urge, it is true that Illinois does have an interest in regulating contracts made by firms doing business within its borders, the Court does not believe that the subject matter of this case reaches the dignity of affecting consumers generally, within the State. For these reasons, the Court finds that the Act is not applicable in this instance, and accordingly holds that this counterclaim must also be dismissed.

## Express Indemnity

■ General and Austin also bring a claim for express indemnity pursuant to the contract entered into between Venturi and Austin. Venturi strongly urges the Court to find the express indemnity clause void as against public policy in accordance with S.H.A. ch. 29, § 61 or Ga.Code Ann. § 13-8-2(b). Both the Illinois and Georgia statutes void indemnity clauses which purport to indemnify a tortfeasor from its own acts of negligence.

Applying either statute, the key question is whether the clause purports to indemnify a promisee from its own solely negligent acts. In this case, the contractual clause at issue states that Venturi is liable,

... for property damage, sustained by any other person or corporation whatsoever ... caused, directly or indirectly by any act or omission ... on the part of the subcontractor.

It is clear from the language of the indemnity clause then that Venturi is liable not for Austin's acts, but rather its own. Thus, neither the Georgia or Illinois statutes would be applicable, and for that reason, the Court finds that the indemnity clause is valid and enforceable.

Perhaps anticipating this conclusion, Venturi also argues that defendants are now barred from enforcing the indemnity clause because they failed to assert the Georgia statutes of limitation in bar of Dixie's claims against them. *See GAF Corp. v. Tolar Const. Co.*, 246 Ga. 411, 271 S.E.2d 811 (1980). (Promisee not entitled

to indemnification if promisee had defense available which would have defeated primary claim, but failed to assert it.) Illinois appears to have no such requirement.

The Court feels the *GAF* decision is distinguishable because it involved a case where the owner actually sued the general contractor, a situation not present here. Furthermore, it was the contract between Austin and Dixie that gave rise to Dixie's claim and it may well have been that the limitations defense was not available to Austin at the time of Dixie's claim. In any event, the Court finds that Austin and General's claim for express indemnity is not barred in the instant suit.

## Implied Indemnity

■ The defendants additionally bring a counterclaim for implied indemnity which Venturi asserts is no longer available in Illinois. Without going into detail, suffice it to say that this Court is intimately acquainted with the state of flux in Illinois courts on the question of implied indemnity premised on vicarious liability. As defendants correctly note, *Heinrich v. Peabody International*, 117 Ill.2d 162, 109 Ill.Dec. 821, 510 N.E.2d 889 (Ill.1987), did not decide that question.[4] Following plaintiff's urging, the Court will apply *Rozycke v. Sroka*, 3 Ill.App.3d 741, 279 N.E.2d 155 (1972) and assume that Georgia law is the same as Illinois law on this issue. Accordingly, the Court finds that the defendants state a claim for implied indemnity as the law now stands in this State.

## Conclusion

At the beginning of their brief, defendants attempt to have plaintiff's Motion treated as one for summary judgment under Rule 56, F.R.Civ.Pro. because both sides submitted affidavits. In arriving at its decision, the Court did not consider the affidavits, as it deemed them unnecessary for the purposes of the Motion. Therefore, this matter was not treated as a motion for summary judgment. Furthermore, all ar-

---

**4.** The question of implied upstream liability in strict liability products cases is currently before the Illinois Supreme Court in *Frazer v. A.F. Munsterman, Inc.*, 145 Ill.App.3d 1092, 99 Ill.

Dec. 734, 496 N.E.2d 309 (2d Dist.1986). The remaining question on vicarious liability situations, is as yet unresolved.

guments of either side not directly addressed in this Memorandum should be considered rejected. For the reasons stated above, plaintiff's Motion to Dismiss (Document No. 13) is hereby GRANTED in part and DENIED in part, as follows:

1. Plaintiff's Motion is GRANTED with respect to defendants' contract, tort, and statutory fraud claims (Counts I, II, and III respectively), and said counts are hereby DISMISSED with prejudice.

2. Plaintiff's Motion is DENIED with respect to defendants' express indemnity and implied indemnity counterclaims (counts IV and V, respectively).

IT IS SO ORDERED.