JAMES O. HURLBERT, d/b/a Hurlbert's Wholesale Roofing & Siding, Plaintiff-Appellee, *v.* DENNIS COTTIER, Adm'r of the Estate of Herbert Cottier, Deceased, Defendant-Appellant.

Fourth District   No. 14582

Opinion filed February 10, 1978.

George L. Chesley, of Bloomington (DePew, Grimes & Chesley, of counsel), for appellant.

Thomson, Thomson, Zanoni, Flynn, Weintraub & McElvain, of Bloomington (Mike McElvain, of counsel), for appellee.

Mr. JUSTICE WEBBER delivered the opinion of the court:

This appeal had its genesis in a simple pedestrian transaction having to do with home improvements. It has grown in stature until now the full panoply of the Consumer Fraud and Deceptive Business Practices Act of Illinois (Ill. Rev. Stat. 1975, ch. 121½, par. 261 *et seq.*) and the Truth in Lending Act of the United States (15 U.S.C.A. §1631 *et seq.*) are called into operation.

In the latter part of February 1973, a salesman representing the plaintiff called upon Herbert Cottier and obtained from him a contract for the purchase and installation of siding on his home. During the pendency of these proceedings Herbert Cottier died and his son, Dennis, was substituted as a party defendant, he being his father's administrator.

Herbert made no payments on the contract and on February 3,

1976, almost three years later, his attorney addressed a letter to plaintiff which stated in part:

> "* * * You are hereby notified that I am on behalf of Mr. Cottier electing to cancel this contract. You may go to his residence and remove the siding from his home at your convenience."

It is admitted that Hurlbert received the letter.

On July 27, 1976, plaintiff filed the instant suit on the contract, seeking the purchase price and attorney's fees. Defendant first answered and later filed an affirmative defense based on the Consumer Fraud and Deceptive ·Business Practices Act, specifically section 2B thereof (Ill. Rev. Stat. 1975, ch. 121½, par. 262B), which reads:

> "Where merchandise having a cash sales price of $25 or more is sold or contracted to be sold whether under a single contract or under multiple contracts, to a consumer as a result of or in connection with a salesman's direct contact with or call on the consumer at his residence without the consumer's soliciting the contact or call, that consumer may avoid the contract or sale by notifying the seller within 3 full business days following that day on which the contract was signed or the sale was made and by returning to the seller, in its original condition, any merchandise delivered to him under the contract or sale. At the time the sale is made or the contract signed, the salesman shall furnish the buyer with a written receipt or contract containing a 'Notice of Cancellation' informing the buyer that he may cancel the sale at any time within such 3 days. Such written 'Notice of Cancellation' may be sent by the buyer to the seller to cancel the contract. The 3 day period provided for in this Section does not commence until the Notice of Cancellation and the consumer is furnished the address or phone number at which such notice to the seller can be given. If those conditions are met, the seller must return to the consumer the full amount of any payment made or consideration given under the contract or for the merchandise. It is an unlawful practice within the meaning of this Act for a seller to refuse to make full refund as required by this Section or for a seller to use any undue influence, coercion, intentional misrepresentation or any other wilful act or representation to interfere with the consumer's exercise of his rights under this Section."

It is further admitted that the contract contained no "Notice of Cancellation" as required by section 2B. A bench trial was held in the circuit court of McLean County. The court entered an order granting judgment to the plaintiff for the contract price plus attorney's fees. The order found that "the original contract failed to include a 'Notice of Cancellation' clause as required by section 262B of ch. 121½, Ill. Rev. Stat.

(1975)" but that "in the circumstances of this case, the lack of a 'notice of cancellation' does not void the contract." This appeal followed.

At the outset we are faced with a statute which is broad in scope but which fails to make provision for the specific situation involved here. No question is raised but that the sale was made at Cottier's residence; it was for more than $25; and Cottier did not solicit the call. However, the statute contains another provision that the buyer "may avoid the contract * * * by returning to the seller, *in its original condition*, any merchandise delivered to him under the contract or sale." (Emphasis added.) The statutory purpose is plain—it is to restore the *status quo ante*; and it will work well in cases of vacuum cleaners and encyclopedias, but it cannot be subserved when siding, or similar materials, which have been substantially altered in their application, are the subject matter of the contract.

Thus the dilemma—either the statute is not intended to cover home improvements on the theory that there is no consumer fraud perpetrated in this area (a doctrine quite contrary to human experience), or else the legislature intended that any gaps be supplied by judicial construction.

■■ Two things lead us to the conclusion that the latter is the proper course of action. First, the Act itself contains the mandate (section 11a) that it shall be liberally construed in order to effectuate its purpose. Second, section 2 of the Act directs that consideration be given in construing that section to Federal law, specifically section 5(a) of the Federal Trade Commission Act (15 U.S.C.A. §45). While the latter is restricted to section 2 in determining the nature of unlawful practices, it appears to us that the legislature intended consultation of Federal laws and Federal court decisions generally when the Illinois statute appears deficient.

The Federal statute which we find to be closest akin to our act in regard to rescission of contracts is a part of what is commonly referred to as the Truth in Lending Act, specifically the rescission provisions which are contained in 15 U.S.C.A. §1635 (Supp. 1977), which read:

"(a) Except as otherwise provided in this section, in the case of any consumer credit transaction in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any real property which is used or is expected to be used as the residence of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under this section and all other material disclosures required under this part, whichever is later, by notifying the

creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, an adequate opportunity to the obligor to exercise his right to rescind any transaction subject to this section.

**Return of money or property following rescission**

(b) When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within ten days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within ten days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it."

Indeed, most of the cases decided under this statute have to do with home improvements.

In addition, there is Regulation Z of the Board of Governors of the Federal Reserve System (12 CFR §226). That part of the regulation dealing with rescission is designated 226.9 and subparagraph (d) of section 226.9 reads:

"When a customer exercises his right to rescind under paragraph (a) of this section, he is not liable for any finance or other charge, and any security interest becomes void upon such a rescission. Within 10 days after receipt of a notice of rescission, the creditor shall return to the customer any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any

security interest created under the transaction. If the creditor has delivered any property to the customer, the customer may retain possession of it. Upon the performance of the creditor's obligations under this section, the customer shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the customer shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the customer, at the option of the customer. If the creditor does not take possession of the property within 10 days after the tender by the customer, ownership of the property vests in the customer without obligation on his part to pay for it."

The statute makes clear that if rescission is to be accomplished, the creditor must first perform all the duties laid upon him and then "the obligor shall tender the property to the creditor, *except that if the return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value.*" (Emphasis added.)

Several Federal courts have had occasion to interpret this statute. The case frequently cited is *Palmer v. Wilson* (9th Cir. 1974), 502 F.2d 860. In that case the district court allowed rescission without the return of the property or the tender of its reasonable value. The circuit court of appeals reversed and directed the district court to consider the matter of conditioning the grant of rescission on repayment. In his concurring opinion, Judge Thompson said:

"If a rescission is demanded and effectuated without litigation, this Section [1635(b)] requires the obligor to return the property or its reasonable value to the creditor. This, together with the Act's failure to void the principal obligation along with the security, is, for me, clear indication of Congressional intent that a complete windfall to the victim was not intended." 502 F.2d 860, 863.

*Palmer* was followed in *LaGrone v. Johnson* (9th Cir. 1976), 534 F.2d 1360, 1362, wherein the court said:

"We conclude, however, that the district court erred in not conditioning rescission on the tender of the net amounts advanced by the Johnsons. The discretion of the court to impose this condition is settled. [*Palmer.*]"

The Court of Appeals for the Fifth Circuit had a similar question before it in *Sosa v. Fite* (5th Cir. 1974), 498 F.2d 114. In that case there was nonperformance by the creditor, but the court said:

"It is true that the statute contemplates an orderly progression of specific events, culminating in the debtor's tender and the creditor's recoupment, which never came to pass in this case. Specifically, section 1635(b) envisions responsive action on the

creditor's part to a rescission notice, after which the debtor then becomes obligated to tender either the property or a sum reflecting its reasonable value." 498 F.2d 114, 118-19.

■■ We find these authorities persuasive and hold that if the return of the merchandise in its original condition, as required by the Illinois act, is impractical or inequitable, the buyer in order to rescind must tender its reasonable value.

In the case at bar we find that the return of the siding in its altered condition by reason of application to the residence would be impractical.

The parties have raised questions of the timeliness of the notice of rescission by the defendant and of laches. In the view we take of this case, we need not address ourselves to those issues.

■■ Since the trial court gave no reasons for its order, we cannot say whether the judgment represents the reasonable value of the siding and since no payments were made by the defendant, there is no restitution to be made by the plaintiff pursuant to the Illinois act. However, the restitution provisions ("the seller must return to the consumer the full amount of any payment made") indicate to us that valuation should be made as of the date of installation, not the date of rescission, in order that the *status quo ante* may be achieved.

■■ We therefore vacate the judgment of the circuit court of McLean County and remand the cause with directions to the court to take further evidence, if necessary, to determine the reasonable value of the siding as of March 1973. If the defendant then tenders such sum to the plaintiff, the cause should then be dismissed. Upon failure of the defendant to make such tender, the circuit court should then enter judgment for the plaintiff and against the defendant in such amount. The statute makes no provision for attorney's fees and therefore that portion of the judgment is vacated in its entirety.

Judgment vacated and cause remanded with directions.

GREEN, P. J., and CRAVEN J., concur.