ERWIN BERNARD FRAHM, JR., *et al.*, Plaintiffs-Appellants, *v.* RONALD S. URKOVICH *et al.*, Defendant-Appellee.

First District (1st Division)    No. 82—0311

Opinion filed March 31, 1983.

Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C., of Chicago (Anthony C. Valiulis and Steven A. Kanner, of counsel), for appellants.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Dennis J. Horan, George W. Spellmire, and Stephen R. Swofford, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiffs brought this action for injunctive relief and damages arising out of a certain real estate transaction. Count III of the amended complaint is brought under the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 261 *et seq.*) (the Act), and alleges that defendant Urkovich, while acting as plaintiffs' attorney, misrepresented certain facts and failed to disclose other material facts to them in conjunction with said transaction. The trial court dismissed count III for failure to state a cause of action under the Act and plaintiffs appeal. We affirm.

The essential factual allegations of plaintiffs' amended complaint, which are taken as true for the purposes of defendants' motion to dismiss and of this appeal, include the following:

In 1976 plaintiffs retained defendant Urkovich as their attorney to represent them in the purchase and development of certain real estate. Upon instructions from defendant, plaintiffs executed a trust which was to deal with the real estate. Plaintiffs were induced by Urkovich and another defendant unknowingly to direct the trust to enter into a certain purchase agreement which was unfavorable to them as purchasers. In addition, during the course of negotiations which preceded the execution of the agreement and the payment by plaintiffs of a substantial sum as "earnest money," Urkovich made numerous representations which he knew or should have known were incorrect or incomplete with regard to the financing and construction of certain buildings on the property and failed to inform plaintiffs of other material facts regarding his professional and business ties with the other defendants. Subsequently, without plaintiffs' knowledge, defendant prepared an additional agreement providing for the sale of the structures to a corporation set up by defendant and headed by plaintiffs' son. This agreement also gave substantial advantages to the seller and left plaintiffs with little or no recourse in the event of

seller's default. Finally, in 1980 plaintiffs were induced to cosign a bank note in the amount of $100,000, pledging $52,000 of their own money as collateral for the loan. The money was used in part to finance the project and for the benefit of certain defendants. By July of 1980, although the sellers were in continuous default for failure to complete the buildings according to schedule, purported notices of default were mailed to plaintiffs. Plaintiffs allege that as a result of defendant's actions and misrepresentations they have lost their entire investment in the project.

Plaintiffs filed a seven-count amended complaint against defendant Urkovich and others. In addition to the count under the Act, plaintiffs filed counts against Urkovich for attorney malpractice, breach of fiduciary duty, fraudulent inducement and conspiracy.

■ On appeal, plaintiffs argue that they are "consumers" under the Act and that the legislatively mandated liberal construction of the Act favors the inclusion of legal services within its ambit. In essence, plaintiffs seek a broad interpretation of the Act which would impose statutory liability for misconduct amounting to professional malpractice. We do not believe, however, that even the most liberal statutory interpretation indicates the application of this consumer protection statute to the conduct of an attorney engaged in the actual practice of law and, accordingly, we find that plaintiffs do not fall within the class of "consumers" which the statute was designed to protect.

The stated purpose of the Act, as set forth in its preamble, is "to protect consumers and borrowers and businessmen against fraud, unfair *** or deceptive acts or practices *in the conduct of any trade or commerce ***.*" (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 121½, par. 261 *et seq.*; see also *Scott v. Association for Childbirth at Home, International* (1981), 88 Ill. 2d 279, 430 N.E.2d 1012.) "Trade and commerce" are defined in the Act to include "the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State." Ill. Rev. Stat. 1981, ch. 121½, par. 261(f).

Plaintiffs rely on additional definitions contained in the Act and rules of statutory construction which, they argue, bring them within the intent and meaning of the Act. We disagree.

A "consumer" under the Act includes: "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." (Ill. Rev. Stat. 1981, ch. 121½, par.

261(e).) "Merchandise" is defined to include "any objects, wares, goods, commodities, intangibles, real estate situated outside the State of Illinois, or services." Ill. Rev. Stat. 1981, ch. 121½, par. 261(b).

Plaintiffs assert their standing to bring a private action as "consumers" who purchased "services" under the Act. In addition, plaintiffs claim that defendant's misrepresentations and material omissions of fact, as alleged in count III of their amended complaint, constituted conduct of the type specifically prohibited by section 2 of the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 312), which is incorporated into the Act under section 2 of the Act (Ill. Rev. Stat. 1981, ch. 121½, par. 262), and which states in relevant part:

> "A person engages in a deceptive trade practice when, in the course of his business, vocation or occupation, he:
>
> * * *
>
> (7) represents that goods or services are a particular standard, quality or grade or that goods are a particular style or model, if they are of another;
>
> * * *
>
> (12) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."

In order to provide the protection intended by the legislature, the Act is to be liberally construed. (Ill. Rev. Stat. 1981, ch. 121½, par. 271a; *Hurlbert v. Cottier* (1978), 56 Ill. App. 3d 893, 372 N.E.2d 734.) Plaintiffs argue that the liberal construction provision of the Act, combined with numerous Illinois decisions recognizing the need for a flexible interpretation of section 2 of the Act, mandates the inclusion of legal services. They further reason that since the language of the Act itself does not specifically *exclude* legal services from those included within the definition of "merchandise," a legislative intent to *include* those services must be assumed.

Plaintiffs cite the United States Supreme Court's analysis in *Goldfarb v. Virginia State Bar* (1975), 421 U.S. 773, 44 L. Ed. 2d 572, 95 S. Ct. 2004, in support of their position. In *Goldfarb*, the court held that a claim based on a minimum fee schedule for title examinations published by a county bar association fell within the scope of the Sherman Antitrust Act. There, the statute before the court was designed to bring within it "every person engaged in business whose activities might restrain or monopolize commercial intercourse among the states." (421 U.S. 773, 788, 44 L. Ed. 2d 572, 585, 95 S. Ct. 2004, 2014, citing *United States v. South-Eastern Underwriters Association* (1944), 322 U.S. 533, 88 L. Ed. 1440, 64 S. Ct. 1162.) As in this case,

the statute did not expressly exclude all professionals.

Based on its recognition that the practice of law as a profession does have a "business aspect" and, specifically, that anticompetitive activities by lawyers could exert a restraint on commerce, the court in *Goldfarb* refused to apply a blanket exemption from Federal antitrust laws to the "learned professions." (421 U.S. 773, 788, 44 L. Ed. 2d 572, 585, 95 S. Ct. 2004, 2014.) Contrary to plaintiffs' assertions, however, the *Goldfarb* court expressly limited its holding to the situation specifically before it. (421 U.S. 773, 788-89 n.17, 44 L. Ed. 2d 572, 585 n.17, 95 S. Ct. 2004, 2013 n.17.) Thus, both that case and *Bates v. State Bar* (1977), 433 U.S. 350, 53 L. Ed. 2d 810, 97 S. Ct. 2691, also cited by plaintiffs, dealt only with commercial aspects of the legal profession through activities which would have a direct effect on the consuming public and not with the practice of law itself. (See also *Selman v. Harvard Medical School* (S.D. N.Y. 1980), 494 F. Supp. 603, 621, *aff'd* (2d Cir. 1980), 636 F.2d 1204.) The interpretation urged by plaintiffs here, however, would necessarily equate the practice of law with an ordinary commercial enterprise, a proposition for which we find no support in case law or public policy. In fact, the court in *Goldfarb* specifically stated that "[i]t would be unrealistic to view the practice of professions as interchangeable with other business activities." 421 U.S. 773, 788-89 n.17, 44 L. Ed. 2d 572, 585 n.17, 95 S. Ct. 2004, 2013 n.17.

This distinction was also recognized by our supreme court in *Scott v. Association for Childbirth at Home, International* (1981), 88 Ill. 2d 279, 288, which stated:

> "The [Consumer Fraud and Deceptive Business Practices] Act is a regulatory and remedial enactment intended to curb a variety of fraudulent abuses and to provide a remedy to individuals injured by them. Its stated purpose *** is to protect Illinois consumers, borrowers, and businessmen against fraud, unfair methods of competition, and other unfair and deceptive *business* practices." (Emphasis added.)

Plaintiffs also cite cases from other jurisdictions which have held legal services to be included within the definition of trade or commerce under similar acts. In *DeBakey v. Staggs* (Tex. Civ. App. 1980), 605 S.W.2d 631, *aff'd* (Tex. 1981), 612 S.W.2d 924, a case brought under the Texas Deceptive Trade Practices Act, plaintiffs sued their former attorney for failure to obtain a change of name. In holding that a client is a "consumer" of legal services as defined under the Texas act, the court reasoned that "[t]he attorney sells legal services and the client purchases them. Unless exempted elsewhere in the stat-

utes, the attorney as well as other professionals are subject to the provisions of the Act." (605 S.W.2d 631, 633.) The court's reasoning, however, was clearly influenced by the fact that physicians and health care providers had been specifically exempted from the provisions of the Texas act where the litigation is based on a claim of negligence and that an amendment to the Act which would have exempted all professional services had been tabled. See *DeBakey v. Staggs* (Tex. Civ. App. 1980), 605 S.W.2d 631, 633.

In *Bourland v. State* (Tex. Civ. App. 1975), 528 S.W.2d 350, also cited by plaintiffs, an attorney was held liable under the Texas act as a result of his involvement in a conspiracy to obtain property. As that case did not specifically deal with the issue of whether the practice of law falls within the statutory definition of trade or commerce, it is inapplicable to the case at bar.

Plaintiffs also cite *Reed v. Allison & Perrone* (La. App. 1979), 376 So. 2d 1067, where the Louisiana Court of Appeals determined that the advertising of legal services was sufficient to bring an attorney's actions within the framework of "trade or commerce" required for "services" subject to that State's consumer protection statute. Plaintiffs urge that the court's reasoning in *Reed* is not limited to advertising but would be applicable to other actions by an attorney in the performance of services to a client. We reject this argument based on the reasons set forth in our previous discussion of *Goldfarb* and because we do not construe the Illinois statute to mandate such broad application.

It is a cardinal rule of construction that statutes must be construed so as to ascertain and give effect to the intention of the General Assembly as expressed in the statute (*People ex rel. Kucharski v. Adams* (1971), 48 Ill. 2d 540, 273 N.E.2d 7), and, absent some clear legislative intent to the contrary, terms are to be given their ordinary and popularly understood meaning. (*General Motors Corp. v. Industrial Com.* (1975), 62 Ill. 2d 106, 338 N.E.2d 561.) The provisions of the Act limit its application to "the conduct of any trade or commerce." (Ill. Rev. Stat. 1981, ch. 121½, par. 262.) In *Chirikos v. Yellow Cab Co.* (1980), 87 Ill. App. 3d 569, 410 N.E.2d 61, the court held that the discharge of a legislative function by an elected body did not constitute "trade or commerce" under the Act. We conclude that the legislature's use of "trade or commerce" in defining the application of the Act was not meant to include the actual practice of law.

Lastly, we do not interpret the liberal construction requirements to mean that liability under the Act is completely open-ended.

Rather, we believe that the Act is intended to reach practices of the type which affect consumers generally and is not available as an additional remedy to redress a purely private wrong. See *Exchange National Bank v. Farm Bureau Life Insurance Co.* (1982), 108 Ill. App. 3d 212, 215, 438 N.E.2d 1247; *Evanston Motor Co. v. Mid-Southern Toyota Distributors, Inc.* (N.D. Ill. 1977), 436 F. Supp. 1370; see also *Lightfoot v. MacDonald* (1976), 86 Wash. 2d 331, 544 P.2d 88.

For the foregoing reasons, we hold that count III was properly dismissed for failure to state a cause of action under the Act.

Affirmed.

McGLOON and CAMPBELL, JJ., concur.