**HERITAGE INSURANCE COMPANY OF AMERICA and Prestige Casualty Company, Plaintiffs,**

**v.**

**FIRST NATIONAL BANK OF CICERO, et al., Defendants.**

**No. 84 C 8747.**

United States District Court, N.D. Illinois, E.D.

Feb. 3, 1986.

Jack Joseph, Arthur Susman, Michael Myers, Joseph Susman & Myers, Chicago, Ill., Dan K. Webb, Timothy J. Rivelli, Peter McCabe, III, Winston & Strawn, Chicago, Ill., Jill B. Berkeley, Dardick & Denlow, Chicago, Ill., for plaintiff Heritage Ins. Co.

Alan I. Boyer, Lincolnwood, Ill., for plaintiff Prestige Cas. Co.

Mary Anne Gerstner, Burke, Griffin, Chomicz & Wienke, Chicago, Ill., for defendant First Nat. Bank of Cicero.

James N. Kosmond, Roger Littman, Querrey Harrow Gulanick & Kennedy Ltd., Chicago, Ill., Orest Szewciw, Donnersber-ger & Szewicw, Munster, Ind., for defendant James T. Sheehan.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This civil action under the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1964(c), is before the court on the plaintiffs' motion to reinstate and for leave to file a second amended complaint. Plaintiffs' first amended complaint was dismissed for failure to plead fraud with particularity. On August 30, 1985 when plaintiffs failed to file an amended complaint, the pendent state law claims were dismissed for lack of subject matter jurisdiction. Plaintiffs filed their motion to reinstate exactly ten days (excluding weekend days) after the dismissal order was docketed, as required by Fed.R.Civ.P. 59 and Fed. R.Civ.P. 6(a) (effective Aug. 1, 1985). A revised second amended complaint was filed on October 25, 1985. The issues presented on the motion to reinstate are whether the revised complaint pleads fraud with particularity and suffices to state a claim under RICO. For the reasons set forth herein, the court concludes that it does, and orders the case reinstated.

For purposes of the present motion, the well-pleaded factual allegations of plaintiffs' complaint are taken as true. Plaintiffs Heritage Insurance Company of America ("Heritage") and Prestige Casualty Company ("Prestige") are Illinois insurance companies licensed to issue performance and payment bonds for public contractors. Defendant First National Bank of Cicero ("Cicero Bank") is a national banking association with its principal place of business in Cicero, Illinois; defendant James T. Sheehan, an Indiana resident, was at all times relevant to the allegations of this complaint a Senior Vice-President of Cicero Bank. Jurisdiction is predicated on 28 U.S.C. § 1331 by virtue of plaintiffs' RICO claim.

The facts giving rise to this lawsuit concern the relationships of both plaintiffs and defendants to McKeever Construction Co.,

an Illinois corporation engaged in the business of public contracting. McKeever is currently undergoing Chapter 11 proceedings in this district. In or about February 1983, McKeever owed Cicero Bank approximately $1 Million, as evidenced by a series of promissory notes. Cicero Bank knew that McKeever was insolvent and that the only way McKeever could discharge its note obligations to the Bank was by successfully bidding on various public projects for road paving work. Such work was then being offered by the Illinois Department of Transportation, the City of Evanston, and the Town of Cicero (hereafter collectively "obligees"). Cicero Bank also knew that upon being awarded the work, McKeever would be required to deliver a performance and payment bond issued by a bonding company as a precondition to public approval of the contract.

At all relevant times, Midwest Indemnity Corp., an Illinois corporation, acted as general agent for plaintiffs in connection with the issuance of performance and payment bonds. During March 1983, Steven Berz, a Midwest underwriter, and Marvin Mann, a Midwest Vice-President, spoke to defendant Sheehan and Jack Cunningham, a Cicero Bank employee, by telephone. Berz and Mann on behalf of Midwest told Sheehan and Cunningham that as a precondition for the issuance of performance and payment bonds for McKeever, Midwest would require appointment of an escrow agent to receive payment from the obligees. Berz and Mann stated at that time that the agent would be required to deposit contract funds relating to each project in separate escrow accounts, with disbursements to be made only to trade creditors for materials supplied or work performed on each respective project and only upon proper documentation. At said time, Sheehan and Cunningham, on behalf of Cicero Bank, stated that the Bank would act as such escrow agent and would comply with the provisions specified by Midwest.

On or about April 28, 1983, defendant Sheehan, as agent for defendant Cicero Bank, executed escrow agreements with McKeever for two contracts with the Illinois Department of Transportation ("DOT"). The escrow agreements were delivered by McKeever, through its president Angelo Christopher, to Midwest on or about the same date. Midwest thereupon caused Prestige to issue performance and payment bonds on the contracts, and the DOT, in reliance on these bonds, subsequently approved the contracts. Similar escrow agreements for other public projects were executed by Christopher and Sheehan, on behalf of McKeever and the Bank, respectively, on or about May 5, 1983; July 19, 1983; and September 19, 1983. In the first two of these instances, Christopher delivered the agreement to Midwest upon execution, Midwest then caused Heritage to issue performance bonds, and the obligees in turn approved the contracts. In the case of the September 19, 1983 agreement, Midwest, in reliance on defendants' promise to execute the escrow, caused Heritage to issue the performance and payment bond a month before the escrow agreement was actually executed.

The escrow agreements themselves nowhere mention the specific promises discussed over the phone with Midwest. The agreements do, however, acknowledge that McKeever's "bonding arrangement" requires the establishment of an escrow account. The agreements further require that Cicero Bank notify Midwest, as a surety of McKeever, in the event that the Bank elects to terminate its responsibilities as escrow agent. The agreements affirmatively oblige Cicero Bank to deposit funds and to issue checks payable to suppliers and subcontractors at McKeever's direction and upon submission of appropriate documentation.

Up to and including March 5, 1984, the date on which McKeever filed for bankruptcy, Cicero Bank did not disclose to plaintiffs that McKeever was insolvent or in debt to the Bank for $1 Million, nor were plaintiffs aware of these facts. Cicero Bank also did not establish, and never intended to establish, the escrow accounts which it had agreed to maintain, but in-

stead used the deposited funds to retire McKeever's past due debts to the bank. This conversion was part of a scheme whereby defendants conspired with Christopher to conceal McKeever's financial problems. It was a part of this scheme that defendants would, after retiring McKeever's debts, then loan McKeever additional amounts of money to hide both the diversion and the past due loans. During the months preceding McKeever's bankruptcy, the defendants and Christopher concealed from plaintiffs and Midwest that they were not placing into escrow the money received from the obligees, and further concealed that the money was in fact being diverted to the defendants' benefit. It was a foreseeable part of the scheme that the obligees would forward funds through the mails, and the complaint identifies twelve such mailings over a six months period, funds from which were then allegedly diverted.

With the various mailings identified as the predicate acts, plaintiffs assert three counts under § 1962(c) based on defendants' participation in the affairs of McKeever and First Cicero Bank Corporation (the Cicero Bank's parent), and based on Sheehan's participation in defendant Bank's affairs. Plaintiffs also assert a § 1962(a) claim against Cicero Bank. Finally, plaintiffs also assert four state law claims: breach of contract under a third party beneficiary theory; violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, common law fraud, and breach of fiduciary duty.

**RICO**

The court first examines whether the revised complaint now possesses the particularity necessary for pleading fraud under Fed.R.Civ.P. 9(b). The revised amended complaint expands upon the first amended complaint in several ways: 1) the new complaint is more specific about the dates of the escrow agreements and plaintiffs' acts in reliance on each agreement; 2) the new complaint reveals for the first time to this court that plaintiffs' agents spoke directly to the defendants in March of 1983 and

that defendants affirmatively offered at that time to comply with plaintiffs' prerequisites; 3) the new complaint also alleges for the first time that the misappropriation of escrowed funds took place with the knowledge and cooperation of McKeever's president, Angelo Christopher. These amendments suffice to rectify the Rule 9(b) problems identified by the court in its June 25, 1985 opinion. The nature of the reliance is more fully set forth and the time frame is now clear. The court therefore turns to defendants' arguments that the fraud claims, even if particularized, are substantively defective, and that plaintiffs have not adequately alleged a "pattern" of such frauds to state a claim under civil RICO.

Plaintiffs' claim of mail fraud rests chiefly on three types of representations and/or omissions: 1) defendants' failure to disclose McKeever's insolvency and debts; 2) defendants' false promise to act as escrow agent; and 3) defendants' misapplication of the escrow funds. Defendants argue that plaintiffs allege no duty of disclosure which would render their omissions actionable, and that the sole representation on which plaintiffs relied was therefore a statement of future intent not actionable as fraud.

It is clear that no duty of disclosure exists absent a fiduciary duty or public trust between parties to a transaction. *Salisbury v. Chapman*, 527 F.Supp. 577, 580 (N.D.Ill.1981). The sole fiduciary duty alleged in the complaint concerns defendants' duties, as escrow agent, to deal with the subject matter of the escrow solely according to the terms of the escrow agreement. Even assuming that this duty runs to the plaintiffs, a matter about which the parties disagree, such a duty would not create an obligation on the Bank's or on Sheehan's part to reveal McKeever's weakened financial state at the time the escrow agreements were first discussed. Therefore, plaintiffs cannot assert a mail fraud claim based solely on the failure to disclose.

Plaintiffs do, however, allege more, and it is with these other allegations that the court is chiefly concerned. While statements of future intent cannot generally be the basis of an action for fraud, *Steinberg v. Chicago Medical School,* 69 Ill.2d 320, 334, 13 Ill.Dec. 699, 706, 371 N.E.2d 634, 641 (1977), this general rule has long been held inapplicable in mail fraud prosecutions under § 1341, so long as the government alleges and proves a present intent not to perform. *Durland v. United States,* 161 U.S. 306, 313, 16 S.Ct. 508, 511, 40 L.Ed.2d 709 (1896) *Burns v. Paddock,* 503 F.2d 18, 23 (7th Cir.1974); *United States v. Herr,* 338 F.2d 607, 610 (7th Cir.1964), *cert. denied,* 382 U.S. 999, 86 S.Ct. 563, 15 L.Ed.2d 487 (1966). While the facts of those cases involve schemes more far-reaching than that alleged here, the opinions emphatically state that the scope of the mail fraud statute should not be restricted by the application of common law principles limiting fraud actions to misrepresentations of existing fact.

■ Even if this court were to apply Illinois law in determining the sufficiency of the fraud allegations for RICO purposes, plaintiffs' allegations would still survive a Rule 12(b)(6) motion. The Illinois rule which limits fraud actions to statements of existing facts is subject to a "well recognized exception where the false promise of representation or future conduct is alleged to be the scheme employed to accomplish the fraud." *Steinberg,* 69 Ill.2d at 334, 13 Ill.Dec. at 706, 371 N.E.2d at 641. While evidence solely of a broken promise does not suffice to create this exception, *Vance Pearson, Inc. v. Alexander,* 86 Ill. App.3d 1105, 42 Ill.Dec. 204, 209, 408 N.E.2d 782, 787 (4th Dist.1980), plaintiffs in this case have alleged a series of false promises coupled with diversion of funds received on the basis of those promises. These allegations are sufficient both for federal and state law fraud.

Defendants argue that even if the allegations of mail fraud suffice to state an offense under 18 U.S.C. § 1341, plaintiffs have not alleged a "pattern" of such offenses sufficient to allege a violation of RICO. Defendants chiefly rely on the now famous footnote of *Sedima, S.P.R.L. v. Imrex Co., Inc.,* —— U.S. ——, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985), and on Judge Milton Shadur's opinion in *Northern Trust Bank/O'Hare, N.S. v. Inryco, Inc.,* 615 F.Supp. 828 (N.D.Ill.1985), which both stress that a "pattern" of racketeering requires both "continuity" of predicate acts and "relationship" among them. My own analysis of the pattern issue is somewhat different from Judge Shadur's, and has now been applied in a number of my opinions. *Graham v. Slaughter,* 624 F.Supp. 222 (N.D.Ill.1985); *Fye v. First National Bank of Niles,* Slip Op. 85 C 0700 (December 3, 1985); *Medical Emergency Service Associates v. Foulke,* Slip Op. No. 85 C 4606 (January 6, 1986). As explained in *Graham,* I agree with Judge Shadur that *Sedima* requires reconsideration of earlier Seventh Circuit case law which allowed multiple mailings in furtherance of a single unified transaction to constitute a pattern of racketeering. 624 F.Supp. at 224–25. In the words of one district court judge, *Sedima* "casts doubt on the continued validity of cases which carve one criminal episode into multiple predicate act 'pieces' and allege a 'pattern' within the meaning of the statute." *Rush v. Oppenheimer & Co., Inc.,* 628 F.Supp. 1188 (S.D. N.Y.1985).

Nonetheless, I also explained in *Graham* that repeated criminal acts may constitute a pattern notwithstanding the fact that they all affect a single victim, involve the same or similar purpose, and utilize identical means. 624 F.Supp. at 225–26. Otherwise, the requirement that criminal acts be "related" as well as "continuous" would be meaningless, since relationship in most circumstances would vitiate a finding of continuity. Accordingly, I found in *Graham* that a two-year practice of embezzling company funds constituted a RICO pattern notwithstanding the fact that the embezzlements could be characterized as comprising a single scheme. Conversely, in *Medical Emergency Service Associates,* I held that a unified transaction resulting in a single

injury did not constitute a "pattern" notwithstanding the number of mailings utilized in furtherance of the transaction.

This case admittedly falls in between the above two examples. If one were to view the fraud as a single decision to misappropriate escrow funds, the fact that mailed escrow payments were received over a six months period would probably not suffice to transmute the unitary nature of the fraud into a "pattern" of racketeering. Plaintiffs have alleged five separate escrow agreements, however, which were executed on four separate occasions, and each of which relates to a separate public contract. Each alleged mailing instigated a new diversion of funds, and hence a new or separate injury. Because the separate diversions can be characterized as new criminal acts, and not simply constituent mailings performed in the execution of a single transaction, the "pattern" element of RICO is satisfied, at least for 12(b)(6) purposes. The fact that the fraudulent promises all took place within a six months period does not strike the court as a basis on which to dismiss the complaint.

■ Because the case will be reinstated, the court now addresses defendant Cicero Bank's arguments that Counts I and II are defective, and will also address the adequacy of plaintiffs' state law claims, decision on which was stayed pending plaintiffs' attempt to replead their federal claims. *See* June 25 Memorandum Opinion and Order at 10. First, Cicero Bank argues that Count I fails to allege a RICO violation based on McKeever as the charged enterprise. The gist of the Bank's argument rests on the failure to allege sufficient participation in or conrol over McKeever to satisfy the statutory language. The court alluded to this problem in its earlier opinion, *id.* at 9. The revisions, however, include allegations that defendants actively conspired with McKeever to hoodwink McKeever's suppliers, subcontractors, and guarantors. There are also allegations to suggest that the Bank coercively used its power as a creditor to dictate to McKeever how it would run certain aspects of its

business. (The only direct allegation of such coercion appears in ¶ 44 of the original Second Amended Complaint, filed Sept. 14, 1985, but is inexplicably omitted from the revised version.) Construing all reasonable inferences in plaintiffs' favor, the court cannot conclude beyond doubt that the plaintiffs would be unable to show participation in or control of McKeever's affairs on the part of defendants. The request to dismiss Count I is therefore denied.

■ Defendant Bank also argues that revised Count II must be dismissed insofar as it purports to state a § 1962(a) claim against the Bank. Section 1962(a) makes it unlawful for any person who has received income derived from a pattern of racketeering, to use or invest such income for the acquisition, establishment, or operation of an enterprise engaged in interstate commerce. Section 1964(c) then provides a civil remedy for parties injured "by reason of" this violation. The revised second amended complaint fails to allege how plaintiffs were injured by the Bank's *use* or *investment* of the racketeering income; rather, the injury results from the racketeering activity itself. While such injury is clearly sufficient for RICO standing under § 1962(c), *Haroco, Inc. v. American National Bank & Trust*, 747 F.2d 384 (7th Cir.1984), *aff'd*, — U.S. ——, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985), plaintiffs cannot recover against the Bank under Count II absent some proximate causation between the § 1962(a) violation and plaintiffs' injury. *See Haroco*, 747 F.2d at 398 ("by reason of" language in § 1964(c) imposes a proximate cause requirement in civil RICO). The complaint as presently alleged gives no indication of how such causation could be plausibly proved. Therefore, the request to dismiss Count II as against the Bank is granted.

Although this disposes of the motion to reinstate the case, there remain pending defendants' motions to dismiss the state law claims. These motions were earlier granted on grounds of pendent jurisdiction, but with the understanding that the court

would revisit the merits of those claims if the amended complaint pleaded a claim under RICO. See June 25, 1985 Memorandum Opinion and Order at p. 10. Since plaintiffs' state law claims are again within this court's jurisdiction, the court briefly discusses the merits of those claims as briefed by the parties last spring.

For reasons that are obvious from the court's discussion of the RICO claim, Count VI of the Revised Second Amended Complaint, which states a claim for common law fraud, survives a motion to dismiss. More perplexing are plaintiffs' claims for breach of contract (Count IV) and for breach of fiduciary duty (Count VII). Plaintiffs have alleged that they are third-party beneficiaries of the escrow agreements, and therefore have the right to sue for defendant Bank's breach of that agreement. (In briefs filed last fall, plaintiffs conceded that their contract claim would not run against Sheehan, who signed the agreements in his representative capacity only, but then renamed him as a defendant in this count.) In accordance with their status as third-party beneficiaries of the agreement, plaintiffs also allege that defendants owed them a fiduciary duty to comply with the provisions of the escrow, and breached that duty.

It is well established that a contract must be entered into for the direct benefit of a third person before that non-party will be allowed to sue for breach. *Carson Pirie Scott & Co. v. Parrett,* 346 Ill. 252, 257–58, 178 N.E. 498, 501 (1931). Whether such a relationship exists depends on the intent of the contracting parties and must be determined "from a consideration of all of the contract and the circumstances surrounding the parties at the time of its execution. *People ex rel. Resnik v. Curtis & Davis,* 78 Ill.2d 381, 36 Ill.Dec. 338, 339, 400 N.E.2d 918, 919 (1980). In addition, the liability of the promisor to the third party must "affirmatively appear from the language of the instrument when properly interpreted and construed." *Id.; Carson Pirie Scott,* 346 Ill. at 258, 178 N.E. at 501; *Midwest Concrete Products Co. v. LaSalle National Bank,* 94 Ill.App.3d 394, 49 Ill.

Dec. 968, 970, 418 N.E.2d 988, 990 (1st Dist.1981).

■ The present escrow contracts, although entered into because McKeever's "bonding arrangement" so requires, on their face disclose no promises which run to the plaintiffs other than the Bank's duty to notify Midwest in the event of termination. The duties instead run only to McKeever, as principal, and to McKeever's suppliers and subcontractors as payees. While ordinarily this would be sufficient to defeat plaintiffs' contract claims, plaintiffs have alleged that they negotiated the escrow provisions directly with defendants, and the circumstances suggest that plaintiffs were the only parties for whose protection the escrows were required. Thus, it is plausible that plaintiffs might prove through the course of negotiations a direct contractual intent to benefit them. It is also unclear on the present record whether plaintiffs' status as sureties allows them to sue on behalf of the subcontractors.

The court adds, however, that plaintiffs' contract claims are on somewhat shaky ground. In *Bescor, Inc. v. Chicago Title & Trust Co.,* 113 Ill.App.3d 65, 68 Ill.Dec. 812, 816–17, 446 N.E.2d 1209, 1213–14 (1st Dist.1983), the court held that the payee subcontractors under a similar escrow were but "incidental beneficiaries" of the trust. While the court relied in part on language expressly disclaiming such liability and a reading of the entire agreement, its analysis might be extended to the present case. Certainly it would not be unreasonable in the present case, had there been no fraud, to limit plaintiffs' right of recovery to an action against McKeever, with whom it had contracted. The court considers the matter more appropriate for treatment under Rule 56 than under Rule 12, however, and will not dismiss the contract claims at this time.

■ Plaintiffs' claims for fiduciary breach also require a fuller record before an affirmative conclusion can be drawn as to their merit. As escrowee, the Bank was prohibited by fiduciary duty from setting off moneys in the escrow for its own bene-

fit. *First National Bank of Thomasboro v. Lachenmyer*, 131 Ill.App.3d 914, 87 Ill. Dec. 53, 56, 476 N.E.2d 755, 758 (4th Dist. 1985). It is also apparent that such a duty typically runs both to the depositor and the party for whose benefit the deposit is made. *Toro Petroleum Corp. v. Newell*, 33 Ill.App.3d 223, 338 N.E.2d 491, 495 (1st Dist.1974). While *Bescor* contains language limiting this fiduciary duty rule only to *"parties* to the escrow agreement," 446 N.E.2d at 1213, the court also rested its analysis on finding no third-party beneficiary status in that case. Under *Bescor*, plaintiffs' rights to sue on a contract or fiduciary breach theory might therefore be coextensive. Therefore, the motion to dismiss Count VII is also denied, but without prejudice to a Rule 56 motion.

This leaves plaintiffs' claim under the Illinois Consumer Fraud and Deceptive Practices Act, Ill.Rev.Stat., ch. 12½, § 262, which appears in Count V of the complaint. Defendants last spring moved to dismiss on the grounds that plaintiffs are not "consumers" within the meaning of the Act and that plaintiffs in any event failed to allege a public injury as required by *Frahm v. Urkovich*, 113 Ill.App.3d 580, 69 Ill.Dec. 572, 576, 447 N.E.2d 1007, 1011 (1st Dist. 1983). Plaintiffs correctly pointed out that the Act protects "businessmen" as well as consumers, and distinguished *Frahm* as concerning the interpretation of the term "trade and commerce." *Frahm* also makes clear, admittedly in dictum, however, that a course of deceptive conduct does not state a claim under the Act unless trade practices addressed to the market generally or consumer protection concerns are involved. In *Newman-Green, Inc. v. Alfonzo-Larrain*, 590 F.Supp. 1083, 1087 (N.D.Ill.1984), the district court followed this dictum to hold that the Act requires some sort of public injury. As the court noted, under a contrary interpretation the Act "would effectively supplant Illinois' common law of contracts and fraud." 590 F.Supp. at 1085. The court finds that reasoning persuasive and adopts it here. Because the complaint involves no such public injury concerns, Count V is dismissed.

## Conclusion

The motion to reinstate the case is granted, and leave is given to file the second amended complaint. Count II (the § 1962(a) claim) is dismissed as against defendant Bank, and Count IV (the contract claim) is dismissed as against defendant Sheehan. Count V is dismissed as against all defendants. The defendants should file an answer within twenty days of the date of this opinion, and the parties should report for status on February 26, 1986. The parties should also be prepared at that time to inform the court as to the status of McKeever's bankruptcy proceedings, and whether any moneys sought in this action might also be recoverable through claims filed in bankruptcy.

It is so ordered.