## GRAPHIC SALES, INC., Plaintiff-Appellant,

v.

## SPERRY UNIVAC DIVISION, SPERRY CORPORATION, Defendant-Appellee.

### No. 85–3134.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 17, 1986.

Decided July 21, 1987.

William J. Harte, William J. Harte, Ltd., Chicago, Ill., for plaintiff-appellant.

Ralph A. Mantynband, Arvey, Hodes, Costello, & Burman, Chicago, Ill., for defendant-appellee.

Before POSNER, RIPPLE, Circuit Judges, and CAMPBELL, Senior District Judge.*

RIPPLE, Circuit Judge.

In this diversity action, Graphic Sales, Inc. (Graphic) sought recission of lease agreements and damages against the Sperry Univac Division of the Sperry Corporation (Sperry). Graphic alleged fraud in the inducement, common law fraud and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act in connection with lease agreements involving computer equipment. Sperry filed a counterclaim for amounts due under the lease agreements. Following a bench trial, the district court entered judgment for Sperry in the amount of $112,549.02 along with the costs of the action. For the reasons set forth below, we affirm the judgment of the district court.

I

Facts

Graphic is an Illinois corporation that uses computerized phototypesetting equip-ment to provide graphic arts services for its customers. Sperry, a Delaware corporation, provides, by sale or lease, computer systems and support to its customers. On February 1, 1980, after having contacted numerous computer .vendors during the previous year, George E. Price, Graphic's President, contacted Robert W. Johnson, a Sperry sales representative, to inquire about replacing its Basic IV computer system. Mr. Price decided that, for Graphic to remain competitive in the phototypesetting business, it needed a new computer that could be linked directly to its typesetting equipment and that could provide word processing capabilities. Mr. Price was an experienced operator of computers prior to meeting with Mr. Johnson.

During the February 1 meeting, Mr. Johnson toured Graphic's facilities to observe Graphic's typesetting operation and equipment. Mr. Johnson received an overview of Graphic's computer requirements and then left a copy of the current Sperry annual report and several brochures. At their next meeting on February 4, 1980, Mr. Johnson gave Mr. Price several brochures describing Sperry equipment that he believed would perform the functions that Graphic needed. The documents included descriptions of the 90/25 and the 90/30 data processing systems as well as a description of a newspaper composition program, "Newscomp," used for production of composed material in the printing and publishing industry. Mr. Price later gave Mr. Johnson a list of hardware specifications required to allow the computer equipment to interface with Graphic's typesetting equipment. At their next meeting, Mr. Price and Mr. Johnson discussed the price of a 90/25 computer system.

On February 12, 1980, Mr. Johnson provided Mr. Price with the names of manufacturers that made black boxes that would enable the 90/25 computer system to interface with the typesetting equipment. Mr. Price also received a copy of the proposed

* The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, sitting by designation.

contracts for leasing the 90/25 system, terminals and program products for which there was a license charge. Before executing the contracts, Mr. Price submitted them to Graphic's attorney for his review and approval. On February 14, 1980, Mr. Price signed leases on behalf of Graphic for the 90/25 computer system and for application software programs, such as BEM monitor, EDT and BASIC, each with a separate monthly license charge for its use.

On February 26, 1980, Graphic leased a 90/30 computer system instead of the 90/25 system. Mr. Price decided to lease the 90/30 computer system rather than the 90/25 computer system because the 90/30 system contained an increased amount of disc memory, communication lines and disc drives. The 90/25 system could be converted into a 90/30 system with the installation of additional hardware. Both systems utilize the OS/3 operating system. The computer equipment arrived at Graphic in May 1980.

On June 20, 1980, Mr. Price wrote a complaint letter to Mr. Vennard, a Chicago branch manager for Sperry. The letter reviewed the meetings between Mr. Price and Mr. Johnson and discussed the problems Graphic had experienced with Sperry's performance. The letter specifically stated that several pieces of hardware were not functioning and that Graphic could not pay for any additional pieces of hardware or software to enable the 90/30 system to operate according to the contract specifications. Because he received no response to his first letter, Mr. Price sent a second letter on July 2 to Mr. Johnson. In this letter, Mr. Price stressed that Graphic could not afford additional equipment and attached a list of problems with Sperry's performance that remained unresolved.

On August 19, 1980, Mr. Price directed an employee to accept for Graphic a written acknowledgement that the equipment installed by Sperry was ready for use. Defendant's Ex. 29. However, in October, Graphic alleged nonperformance of the contracts and consequently stopped paying rent to Sperry for the use of the leased equipment. On December 15, 1980, Mr. Price signed a "detailed implementation plan" enumerating the tasks that both Graphic and Sperry needed to accomplish in order for the computer system to function according to specifications. Several of these tasks were not scheduled to be completed until the end of January 1981 or mid-February 1981; however, in January 1981, Graphic ordered Sperry off its premises. Graphic returned the computer equipment to Sperry on May 28, 1981.

The dispute in this case centers on misrepresentations Sperry allegedly made to Graphic regarding the availability of application software. Both parties agree that the lease of computer equipment involved a "bundled" product, but they disagree as to the meaning of the term "bundling." Graphic contends that Sperry's brochures indicated that application programs, such as Newscomp, were included with the 90/25 system hardware and the OS/3 operating system at no additional charge and were thus part of the bundled product.[1] Graphic specifically maintains that the unavailability of both the Newscomp application software and its replacement, Graphic Text Management System, "GTMS," caused it to sustain damages because, without those programs, it did not have the capacity to meet its customers' needs. Sperry claims that, in accordance with the custom and usage in the computer industry, the only software included in the bundle is the operating system and that application software is leased separately.

## II

### The District Court Opinion

In its findings of fact, the district court described the meetings between Mr. Price and Mr. Johnson essentially as set forth

---

**1.** Computer software consists of programs that operate the computer system. Software can be divided into two categories: operating system software and application software. Operating system software is necessary for a computer to function because it provides the interface between the equipment and the operator. Application software, in contrast, consists of programs designed to perform a specific task, such as balancing an account.

above. The court determined that it is customary in the computer industry for there to be a separate charge for application software and that the term "bundling" as used by the parties, in accordance with industry usage, meant that the computer system included only the operating system at no additional cost. The court further stated that Sperry explained to Mr. Price that application software was not included in Graphic's contract for lease of the 90/25 computer system. Moreover, the court found that Newscomp had not been discussed with Mr. Price prior to the date that the lease had been signed and that Mr. Price requested a copy of the Newscomp tape from Sperry in July 1980. Sperry responded that he could use the tape, but that Sperry would not provide technical support. The court noted that the complaint letters Mr. Price sent to Sperry contained no complaints about application software.

Addressing Sperry's performance under the lease agreements, the court found that there was a point in time when the 90/30 system successfully interfaced with Graphic's typesetting equipment. Further, the court found "that Sperry was at all times ready, willing and able to perform and to make preparations to perform on its part the obligations under the contract." *Graphic Sales, Inc. v. Sperry Univac Div., Sperry Corp.*, No. 81 C 3185, mem. op. at 16 (N.D.Ill. Nov. 14, 1985) [hereinafter cited as Mem. op.]. In the court's view, Graphic prevented Sperry from performing its responsibilities when it demanded that Sperry remove the computer equipment from Graphic's premises. The court then found that Graphic owed Sperry $112,-549.02 under the terms of the lease agreements.

In its conclusions of law, the district court first noted that article 2 of the Uniform Commercial Code (UCC), Ill.Ann.Stat.

ch. 26, art. 2, applies to leases of computer equipment, and held Graphic liable to Sperry under both the UCC and the common law for breach of contract. The court also stated that "[i]t is obvious from the four corners of the agreements that application software was not included." Mem. op. at 18.

The court further held that Sperry did not fraudulently induce Graphic to lease Sperry's computer. The court stated that an action for fraud must be predicated on statements of existing facts and that any representations made after the leases were signed could not provide grounds for recission of the contracts because they did not form the basis for the agreements. The court further concluded that Graphic failed to establish that Sperry had violated the Illinois Consumer Fraud and Deceptive Business Practices Act because the evidence "failed to establish that Sperry intentionally misrepresented or omitted any pertinent details in its pre-contract negotiations with Graphic." Mem. op. at 19. The court held, in the alternative, that, as a matter of law, Graphic's claim was not actionable under the Act because the lease agreements were commercial transactions and Sperry's allegedly fraudulent misrepresentations did not affect consumers generally.

### III

### Analysis

### A.

Graphic contends that the district court misinterpreted the elements of the Illinois Consumer Fraud and Deceptive Business Practices Act[2] by requiring Graphic to establish that Sperry made a material misrepresentation *with the intent to deceive.* Graphic claims that, in affirmative misrepresentation cases, the Illinois courts consider the effect of the defendant's conduct,

**2.** Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act provides:

Unfair ... or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, ... in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby....

Ill.Ann.Stat., ch. 121½ ¶ 262.

not his intent. Graphic further maintains that the misrepresentations made by Sperry did not pertain to future events, nor were they "puffing."

While there is significant Illinois authority for the proposition that the defendant's intent is not an element of a cause of action under the Act,[3] it is clear that the plaintiff must establish that the defendant made a misrepresentation of material fact. "To establish a violation of the Act, plaintiff must show a misrepresentation, concealment or omission of a material fact with intent that others rely upon that fact." *General Motors Acceptance Corp. v. Grissom*, 150 Ill.App.3d 62, 103 Ill.Dec. 447, 448, 501 N.E.2d 764, 765 (1986). "The focus of the reviewing court's inquiry under the Act is the deceptive capacity of the statements at issue." *City of Aurora v. Green*, 126 Ill.App.3d 684, 81 Ill.Dec. 739, 742, 467 N.E.2d 610, 613 (1984); *see also Crowder v. Bob Oberling Enter., Inc.*, 148 Ill.App.3d 313, 101 Ill.Dec. 748, 750, 499 N.E.2d 115, 117 (1986). While a plaintiff suing under the Act "need not establish all the elements of fraud, plaintiff is required to establish a misrepresentation or omission of a material fact under both causes of action." *General Motors Acceptance Corp.*, 103 Ill.Dec. at 449, 501 N.E.2d at 766. It was therefore necessary for Graphic "to demonstrate ... that the defendant made a misrepresentation of a material fact." *Shah v. Chicago Title & Trust Co.*, 119 Ill.App.3d 658, 75 Ill.Dec. 357, 361, 457 N.E.2d 147, 151 (1983).

After reviewing the record and the district court's findings of fact, we conclude that the district court correctly determined that Graphic has not sustained its burden of establishing that Sperry made a material misrepresentation. In cases involving fraud under Illinois law, the finding of misrepresentation is a question of fact. *Gordon v. Dolin*, 105 Ill.App.3d 319, 61 Ill.Dec. 188, 194, 434 N.E.2d 341, 347 (1982). Graphic contends that the district court's findings of fact are clearly erroneous and should therefore be set aside. We do not agree.

Rule 52 of the Federal Rules of Civil Procedure sets forth the appropriate standard of review for findings of fact: "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." A finding is clearly erroneous when " 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.*, 470 U.S. at 573–74, 105 S.Ct. at 1512. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574, 105 S.Ct. at 1512; *see also Yowell v. United States Postal Serv.*, 810 F.2d 644, 648 (7th Cir.1987); *Hayden v. Oak Terrace Apartments*, 808 F.2d 1269, 1271 (7th Cir.1987).

After reviewing the record in its entirety, we are not "left with a definite and firm

---

**3.** As Graphic indicates, the Illinois courts have generally held that the defendant's intent is not an element of a cause of action under the Act, but rather the effect upon consumers is the relevant consideration. *See, e.g., People ex rel. Hartigan v. Stianos*, 131 Ill.App.3d 575, 86 Ill. Dec. 645, 648, 475 N.E.2d 1024, 1027 (1985) (stating that "an intent to deceive is not essential to a finding of unfair or deceptive conduct under section 2 of the Consumer Fraud Act"); *People ex rel. Fahner v. Walsh*, 122 Ill.App.3d 481, 77 Ill.Dec. 691, 695, 461 N.E.2d 78, 82 (1984) ("the key consideration is the effect of [the defendant's] conduct, not his intent"). Under the Act, "state of mind is immaterial, and a defendant need not be motivated by an intent to deceive.... By its own terms, the statute requires only that a violator intend for a purchaser to *rely* on his acts or omissions." *Warren v. LeMay*, 142 Ill.App.3d 550, 96 Ill.Dec. 418, 428, 491 N.E.2d 464, 474 (1986) (emphasis in original).

conviction that a mistake has been committed." *Anderson*, 470 U.S. at 573, 105 S.Ct. at 1511. Read in context, the portions of the Sperry brochures cited by Graphic as misleading do not misrepresent the services provided by Sperry. For example, one brochure states that: "In addition to the standard software package, the programmed support for the 90/25 system includes a number of proprietary applications programs. Each of these programs solves problems distinctive to a particular type of user." Plaintiff's Ex. 2. Another brochure describes the OS/3 operating system software as follows: "OS/3 is a comprehensive library of programs consisting of a flexible executive, a collection of language processors, utility routines, and application programs." Plaintiff's Ex. 3 at 19. The same brochure continues its description of the system software as follows: "In concert with a collection of programming languages, utility routines, and application programs, Sperry Univac provides the user with a viable program library to take full advantage of the extended capabilities of the 90/30 Data Processing System." *Id.* at 21. The brochure also contains a diagram of the system software components, including application software. *Id.* These statements, read in context, do not necessarily imply that application programs are offered at no additional cost, but merely indicate their availability.

A witness for Sperry admitted on cross-examination that he would have interpreted the Sperry brochure to mean that purchase of the computer system included application software. Tr. Vol. II at 160, 162. However, the record contains testimony of Sperry's representative that the lease arrangement did not contemplate "bundling" application programs. Mr. Johnson testified that it had been explained to Mr. Price that application software was not included in the bundled product. Tr. Vol. III at 362. Also, according to Mr. Johnson, Mr. Price had the responsibility of writing the application software for the 90/30 system, not Sperry. *Id.* at 366–67. In this case, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574, 105 S.Ct. at 1512.

### B.

Graphic also contends that the district court's alternate conclusion that the Illinois Consumer Fraud and Deceptive Business Practices Act does not provide relief for commercial transactions is incorrect. Because we have concluded that Sperry did not misrepresent its services to Graphic, we need not decide whether the Act provides a cause of action to redress private wrongs or whether its protection is limited to wrongs that affect consumers generally.[4] As a federal court whose jurisdiction is based on diversity of citizenship, we are particularly hesitant to decide unsettled questions of state law unnecessarily.

---

**4.** Appellant maintains that the district court's construction of the Act ignores the statute's plain meaning, its legislative history and the decisions of the Illinois courts interpreting its language. The purpose of the Act is to "protect consumers and borrowers and businessmen against fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce...." Title of Act, ¶ 261 note. The Act provides that "[a]ny person who suffers damage as a result of a violation of Sections 2 through 20 of this Act committed by any other person may bring an action against such person." *Id.* ¶ 270a. The term "person" includes a corporation. *Id.* ¶ 261, § 1(c).

While the plain language of the Act would apparently allow Graphic's suit, there is a split of authority among the Illinois courts as to whether a plaintiff must allege a public injury or a general effect on consumers in order to recover under the Act. *See Maduff v. Life Ins. Co. of Virginia*, 657 F.Supp. 437 (N.D.Ill.1987). Certain cases have held that a single deceptive business practice against one plaintiff imposes liability under the Act while other cases require an allegation of public injury or an effect on consumers generally. *Compare Duncavage v. Allen*, 147 Ill.App.3d 88, 100 Ill.Dec. 455, 463, 497 N.E.2d 433, 441 (1986) and *Warren v. LeMay*, 142 Ill.App.3d 550, 96 Ill.Dec. 418, 429, 491 N.E.2d 464, 475 (1986) (victim of a private wrong may recover under the Act) *with Evanston Motor Co. v. Mid-Southern Toyota Distrib.*, 436 F.Supp. 1370, 1374 (N.D.Ill.1977) and *Frahm v. Urkovich*, 113 Ill.App.3d 580, 69 Ill.Dec. 572, 575, 447 N.E.2d 1007, 1011 (1983) (Act not available to redress a purely private wrong).

**582**

### Conclusion

After reviewing both the documentary and testimonial evidence presented during the trial, we hold that the district court did not clearly err in finding that Sperry did not misrepresent the services it would provide to Graphic under the lease agreements. Accordingly, we affirm the judgment of the district court.

AFFIRMED.